[No. 11523. Department Two. May 5, 1914.]

JOE SMITH, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—PLEADING. As against objection for the first time on motion for a directed verdict, a complaint under the Federal employers' liability act sufficiently alleges that a railroad company's branch line was used in interstate commerce, although not directly alleged, where the same was fairly inferable from general allegations that the defendant owned an interstate system of railways with several branches engaged in interstate commerce between several states, one of which was the branch in question.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS—WAIVER. In an action under the Federal employers' liability act, in which the trial proceeded upon the theory that the action was brought under that act, and the court charged, without exception taken, that it was conceded that the defendant was engaged in interstate commerce, it is too late to urge, by motion for a directed verdict, that there was no pleading or proof of that fact.

MASTER AND SERVANT—INJURY TO SERVANT — NEGLIGENCE — QUESTIONS FOR JURY. Whether there was negligence in allowing a pile to swing around and strike the plaintiff, a member of a railroad bridge crew, is a question for the jury, where there was evidence that the accident would not have happened if the engineer operating the pile driver engine had held onto the line, which it was his duty to do until he received a signal to let go, and that he let go without a signal, thereby causing the accident.

DAMAGES—PERSONAL INJURIES—AGGRAVATION—SECOND ACCIDENT—LIABILITY—INSTRUCTIONS. Where plaintiff, while in the hospital, fell and refractured his broken leg, and defendant claimed that the second fracture was due to plaintiff's intoxication, it is proper to instruct that the defendant, through whose negligence the first injury was sustained, would be liable in damages for the additional suffering and delay, as the proximate result of the original injury, if the second accident was not due to plaintiff's intoxication; since the law regards the probability of aggravation from an accident, not the result of want of ordinary care on the part of the injured person, as a sequence and natural result of the original injury.

TRIAL—CONDUCT OF TRIAL—READING EVIDENCE—DISCRETION. It is not an abuse of discretion to refuse to allow extracts of the testimony

[1]Reported in 140 Pac. 685.

to be read to the jury in argument, for the purpose of contradicting the statement of opposite counsel that there was no evidence on the subject, where the attorney was not denied the right to refresh his memory from the stenographic notes or other memorandum nor from stating to the jury his remembrance of the testimony of any witness.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $15,000 for injuries resulting in a shortened and deformed leg, is excessive, where plaintiff's physical health was otherwise good and avocations were open to him which he could still pursue; and should be reduced to $10,000.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 22, 1913, upon the verdict of a jury rendered in favor of the plaintiff, for $15,000, for personal injuries sustained by one employed in a railroad bridge crew. Reversed, unless $5,000 is remitted.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for appellant.

· *Govnor Teats, Leo Teats*, and *Ralph Teats*, for respondent.

FULLERTON, J.—The respondent, plaintiff below, brought this action against the appellant railway company, under the Federal employer's liability act, to recover for personal injuries suffered by him while in the appellant's service as a member of its bridge crew. At the trial, the superior court refused to direct a verdict in the appellant's favor, and the jury returned a verdict for the respondent in the sum of $15,000. Judgment was afterwards entered on the verdict, and this appeal taken therefrom.

At the time of the accident giving rise to the injury, the appellant was engaged in repairing a bridge extending across a stream on one of its branch lines. The repair work necessitated the driving of piles. Timbers suitable for piling were hauled by the appellant and unloaded alongside of the railway track, a short distance back from the margin of the stream. The respondent's duty was to cut the timbers into

15—79 WASH.

proper lengths for use as piles and prepare the points and heads for driving. The work of driving the piles was carried on as the respondent prepared them for use. To drive the piles, the appellant used a pile driver fastened upon a flat car, which car was moved forward and back along the railway track by means of a locomotive engine. The uprights or leads of the pile driver were 35 feet in height, while the piles then being driven were 55 feet long. To pick up a pile for driving, the car containing the pile driver was moved along the railway track to a point opposite the pile and stopped, or, in technical parlance, spotted. The cable of the pile driver which passed over the top of the leads was then fastened to the pile, and by means of the engine which operated the pile driver, the pile was hauled up between the leads into an upright position. As the piles in this instance were some 20 feet longer than the leads of the pile driver, it was necessary, in order that the piles might be clear of the track when placed between the leads, to fasten the cable some 20 feet back from the top or heavy end of the pile.

A pile was being picked up in the manner described at the time the respondent was injured. He assisted in fastening the cable to a pile and moved across to the opposite side of the track from the pile when a signal to hoist was given the engineer operating the pile driver engine. After the end of the pile had been hoisted to a height of some 10 or 12 feet it suddenly swung over to the side of the track on which the respondent was standing, where it struck the respondent and caused the injuries for which he sues.

Noticing the errors assigned in the order in which the appellant presents them, it is first contended that there is no allegation in the complaint, or proof in the record, that the branch line of the appellant's railway, on which the accident happened, was used by it in its business of carrying interstate commerce. But while the allegation of the complaint was not as full in this respect as it could have been made, we think it sufficient, as against an objection raised for the first time by

motion for an instructed verdict. In the complaint, it is al-
leged that the appellant "is at this time, and was at all the
times herein mentioned, a corporation organized and existing
under the laws of the state of Wisconsin, owning and oper-
ating an interstate system of railways, with several branches
in the western part of the state of Washington, engaged in
commerce between the several states from Minnesota to Puget
Sound and Oregon;" and that one of its branch lines extended
"out from the city of Tacoma southeasterly, herein called
the Wilkeson branch," on which the accident to the respond-
ent happened. It is true, as the appellant argues, there is
no direct allegation in the complaint that the so-called Wilke-
son branch was, at the time of the injury, used by the appel-
lant in interstate commerce, but we think it is clearly so in-
ferable from the other facts alleged. While the language
might have been better chosen, it is plain that the pleader
meant to allege, and would be commonly understood as alleg-
ing, that the interstate system as well as the several branches
mentioned were used by the appellant in its business of in-
terstate commerce. Moreover, the record discloses that the
trial proceeded throughout on this theory. The motion for
a directed verdict, which is now thought to have raised the.
question, was couched in language so general as not to call ·
attention to the particular question, and was, furthermore,
submitted without argument; and, indeed, the court charged
the jury, without exception from the appellant, that the fact
that the appellant was engaged in interstate commerce on
this branch of its road was conceded by both the parties. ·
This being true, it is too late to urge the question in this.
court.

The allegations of the complaint in the respect mentioned
were admitted in the answer, and since we hold them sufficient,
it was of course not necessary that proof thereof be tendered
or made.

It is next contended that the evidence failed to show negli-
gence on the part of the appellant. But we think the most

that the appellant can claim on this branch of the case is that
the evidence was in dispute. The evidence on the part of the
respondent tended to show that, when the pile swung from the
one side of the track to the other, it was sufficiently high to
have swung clear of the respondent had the engineer operat-
ing the pile driver engine held on to the line; that it was his
duty to hold the line unless he received a signal from the
signalman, directing the operations, to let go; that he let go
of the line without such a signal, and it was because of his
neglect of his duty in this respect that the pile fell upon the
respondent. Stress is laid on the fact that no one was able
to testify directly that they saw the pile dropped by the
engineer. But the conclusion was inferable from other facts
shown, and this justified the trial court in submitting the
question to the jury.

The respondent, among other injuries, sustained a fracture
of the femur of the left leg. When still in the hospital, al-
though going about on crutches, he fell while attempting to
descend a stairway and refractured the bone at the place
of the original fracture. This accident confined him to his
bed for an additional eleven weeks, and correspondingly in-
creased his sufferings and delayed his recovery. The appel-
lant introduced evidence tending to show that the respond-
ent was in an intoxicated condition at the time of the second
fracture, and that such fracture was the direct and proxi-
mate result of his intoxicated condition. In its charge to
the jury upon this question, the court instructed them that,
if they found that the respondent was in an intoxicated condi-
tion at the time he received his second injury, and that such
condition was the direct and proximate cause of such second
injury, then the appellant would not be liable in damages for
the additional suffering and delay in recovery caused thereby,
but would be liable only for such damages as were the direct
and proximate result of the original injury; adding thereto
that, if they found that the respondent was intoxicated at
the time he fell and fractured his leg the second time, but

that his fall was not the result of his intoxicated condition, then they should disregard such fact in making up their verdict.

Error is assigned on the last part of the instruction, but manifestly it is a correct statement of the law. If a person receives an injury through the negligent act of another, and the injury is afterwards aggravated, and a recovery retarded through some accident not the result of want of ordinary care on the part of the injured person, he may recover for the entire injury sustained, as the law regards the probability of such aggravation as a sequence and natural result likely to flow from the original injury.

In the course of the argument to the jury, one of the attorneys for the respondent made statements to the effect that there was no evidence before them concerning a particular fact. The attorney for the appellant had the stenographer in attendance upon the court transcribe extracts from the testimony of a certain witness, and when arguing the appellant's case to the jury, sought to read these extracts as controverting the attorney's statements. An objection was made to the reading of the extracts unless the whole of the evidence of the witness should be read. The court sustained the objection, whereupon the attorney requested that the stenographer read the parts transcribed from his shorthand notes, which request was also denied by the court. These rulings are assigned as error, but we do not think them so. How many times a witness may be recalled on a particular matter, or how many times his evidence may be repeated to the jury, rests in the sound discretion of the court, to be reviewed only for abuse. Here we find no abuse of discretion. The attorney was not denied the right to refresh his memory from the stenographic notes, or from any memorandum he may have made of the evidence otherwise, nor was he denied the right of stating to the jury his remembrance of the testimony of any witness, nor from drawing any deduction or conclusion he chose to draw therefrom. He

was denied only the right of doing what amounted virtually to a recall of the witness and have him repeat to the jury what he had testified on a particular matter. Doubtless in the interests of truth and justice the trial judge may permit such a practice, but it does not belong to either litigant to demand it as an absolute right.

Lastly, it is contended that the verdict is excessive, and with this contention we are constrained to agree. Unquestionably the respondent's injuries were severe, and he has suffered much because thereof. But, nevertheless, we think the verdict ought not to be allowed to stand for the amount returned by the jury. The resultant effect of the injury is a shortened and otherwise deformed leg, which will probably not permit the respondent to engage in the avocations followed by him prior to his injury. But his physical health is otherwise good, and as we said in passing upon a similar injury, there are avocations open to him which he may still pursue. In finding the amount of the recovery, this is a proper consideration, and seemingly the jury, which gave but thirty minutes to a consideration of the case, did not sufficiently consider it.

The judgment appealed from will therefore be reversed and the cause remanded with instructions to grant a new trial, unless the respondent will, in writing, within thirty days after the remittitur from this court reaches the trial court, consent to a judgment of ten thousand dollars. If he so consents, judgment shall be entered in his favor for that sum. If he fails to consent within the time named, a new trial will be granted.

CROW, C. J., MOUNT, MORRIS, and PARKER, JJ., concur.