S. S. KRESGE CO. v. KENNEY.
No. 6629.

United States Court of Appeals for the District of Columbia.

Decided Aug. 17, 1936.

Petition for Rehearing Denied Dec. 2, 1936.

GRONER, Associate Justice, dissenting.

Walter C. Clephane, J. Wilmer Latimer, and Gilbert L. Hall, all of Washington, D. C., for appellant.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal by S. S. Kresge Company, defendant below, hereinafter called defendant, from a judgment entered upon a verdict in the Supreme Court of the District of Columbia in favor of the appellee, Nellie Lowe Kenney, plaintiff below, hereinafter called plaintiff. The suit was in negligence for personal injuries alleged to have been sustained when the plaintiff fell in the defendant's store on December 13, 1933. On October 3, 1934, she sustained further injury by reason of a second fall which she alleged was the result of physical weakness produced by the original injuries. The sole question in the case is whether or not there was evidence from which a jury could conclude that the

defendant was responsible for the injury received in the second fall.[1]

The facts are as follows: The plaintiff was a married woman, a chiropodist by profession, in good health, about sixty-three years of age, residing with her husband in the District of Columbia. On the date of her first fall she had gone into the defendant's store to do some Christmas shopping. On the way down steps leading from the street floor to the basement, she caught her foot in a toy drum which had been placed on the steps by an employee of the defendant, and fell to the bottom of the steps. Thereby she received a simple fracture of the anterior branch of the left pubis, a simple complete fracture of the eighth and ninth ribs on the right side in the front, and other injuries. After treatment in a hospital for several days, she was taken to her home and was there confined in bed for about seven weeks, or until about the middle of February. Thereafter she was able to be out of bed to some extent, and with assistance to get from her bedroom to her operating room, which was located at her residence, and at times to work on patients by sitting on a hospital cushion on a stool and wearing a support which her doctor had provided and which her maid would strap upon her. Respecting her second fall the plaintiff's testimony was: "On the night of October 3, 1934, at about 11:30 P. M. she wanted a drink of water. There was a water bottle on the mant*le* beside her bed in which she kept her water cool and she slipped around and up and thought she would get to the mant*le*. 'I thought, "well, I am not very steady, but I think I can get it." So, I didn't want to disturb anybody. Anyway, I reached up for my water bottle, and when I did, I staggered backwards (indicating), and sat down. On the floor, I sat down hard, and that broke my back.'"

The case was duly tried to a court and jury, and at the close of the evidence the defendant requested, among other instructions, the following:

"The jury is instructed that there can be no recovery in this case for injuries caused by plaintiff's fall in the month of October, 1934, but in case they shall find in favor of the plaintiff, their verdict must be confined to damages for such injuries only as were the proximate result of the fall in December of 1933 in the Kresge store."

This, upon objection by the plaintiff, was refused, and exception duly noted. Thereafter, at the request of the plaintiff, the court instructed the jury:

"You are also instructed as a matter of law that if your verdict is for the plaintiff and if you further find from the evidence that the plaintiff acted as an ordinary and reasonable person on the night of October 3, 1934, in trying to get a drink of water and that while so doing she was caused to fall as a direct result of a weakness or physical instability produced by the injuries which she sustained on December 13, 1933, in the defendant's store, then you are instructed that she is entitled to recover for the injuries sustained by the fall on October 3, 1934, in addition to the injuries sustained on December 13, 1933." There was a verdict for the plaintiff in the sum of $12,000, and judgment was entered thereon. The errors assigned are to the action of the court in granting the instruction given, and in refusing to grant the instruction requested.

The defendant does not urge that the instruction given embodied an incorrect statement of the law. But the defendant contends that there was no evidence sufficient for the jury upon the issue of responsibility for the second fall. The defendant asserts, putting it concretely, that the evidence did not justify the consideration by the jury of the injuries sustained as the result of the second fall. The law embodied in the instruction given was correct. The law holds responsible in damages one whose negligent act is the proximate cause of injury to another. "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Goodlander Mill Co. v. Standard Oil Co. (C.C.A.) 63 F. 400, 405, 27 L.R.A. 583. In the application of these principles to a situation where one injury alleged to have

[1] At the opening of the trial, the plaintiff, over objection by the defendant, with exception noted, was permitted to amend her declaration so as to include a claim for damages for injury resulting from the second fall. This action of the court was assigned as error, but appellant did not argue the assignment in the brief and we therefore treat it as abandoned.

been caused by the negligence of another is succeeded by a further injury alleged to be the result of the first, the law regards negligence on the part of the injured person which contributes to the further injury as an efficient intervening cause. Hartnett v. Tripp, 231 Mass. 382, 121 N.E. 17; Wagner v. Mittendorf, 232 N.Y. 481, 134 N.E. 539, 20 A.L.R. 520; Hoseth v. Preston Mill Co., 49 Wash. 682, 96 P. 423.

In effect the defendant's position, as embodied in its objection to the instruction given and as embodied in its requested instruction, was a motion for a directed verdict in the defendant's favor upon the issue of responsibility for the injuries caused by the second fall. As we said in Hopkins v. Baltimore & Ohio Railroad Company, 65 App.D.C. 167, 81 F.(2d) 894, 898.

"It is of course the rule on a motion for a directed verdict that the evidence must be '. . . construed most favorably to the plaintiff . . .' Thomas R. Riley Lumber Co. v. McHarg, 47 App.D.C. 389, 390. But this does not mean that there must be put upon the plaintiff's evidence a strained construction. The plaintiff must be given '. . . the advantage of every inference *fairly* deducible from all the testimony . . .' Idem. The trial judge must give '. . . full effect to every *legitimate* inference . . .' Dodge v. Rush, 28 App.D.C. 149, 154, 8 Ann.Cas. 671. As said by the United States Supreme Court, a directed verdict is to be granted when '. . . the evidence, with all the inferences, that *justifiably* could be drawn from it, does not constitute a sufficient basis for a verdict . . . A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule "that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed" [authorities cited].' Gunning v. Cooley, 281 U.S. 90, 93, 94, 50 S.Ct. 231, 232, 233, 74 L.Ed. 720. [Italics supplied.]"

Upon a careful review of the record we feel compelled to conclude that there was not evidence from which a reasonable juryman could find that the defendant was legally responsible for the injuries received in the plaintiff's second fall, or, putting it affirmatively, we feel compelled upon the record to conclude that under the evidence all reasonable jurymen must have found that the defendant was not legally responsible for the injuries received in the second fall.

Supporting the view that the plaintiff, in respect of her second fall, was negligent, is the following: According to the plaintiff's attending physician, the plaintiff's injuries were serious.

"Although there were continued applications of ordinary treatments there was no response as to healing, in that there was no callous formation. 'The two bones [the reference here is to the pubic fracture] were equally as immobile as at the time of the injury, and throughout the entire period [apparently the witness was referring to the period between the first and second fall] there was no evidence manifested of any regeneration of the bone structure or union of the fractures.' * * *

". . . there was and remains instability. She never acquired that sense of equilibrium which was required for freedom of movement. Some motion could be attained, but it was always with the feeling that comes from an insecure foundation."

In March before the October of the second fall, the plaintiff's physician:

"informed the plaintiff that as far as he understood her condition she had arrived at as much in the way of relief of her symptoms as was possible to obtain, there being no evidence of healing and informed her at that time that she would have to remain an invalid."

The physician testified further:

"She frequently had to be assisted during that period [between March and October], but witness could not tell who assisted her inasmuch as he was not present."

According to the plaintiff's daughter:

"plaintiff was not able to do anything for herself . . . she saw her mother every day for a period of about five months [the period of five months succeeding the first fall] after that; during that period plaintiff was an invalid, not able to help herself at all, having pains all through her side . . . witness saw plaintiff al-

most every day after this five months period . . . plaintiff was then very weak and could only get around by the help of some member of the family and would spend most of the day in bed . . . about two days before the plaintiff's second fall in October, 1934, witness had seen her . . . she was then extremely weak and could get around just by the help of someone at home . . . since the accident in December she has been in very bad condition so far as nerves are concerned."

The testimony of the plaintiff's daughter-in-law was:

"witness saw her about every other day until the date of trial . . . after plaintiff was taken home she was not able to be out of bed and suffered terrible pain, for about six weeks; after six weeks she was able to be out of bed; after which she tried to do a little business then with the assistance of her maid, but she could not walk alone. She would take two or three patients a day and would have to go back to bed. She was always in pain. Up to the time she had her second fall in October, 1934, witness saw her a day or so before that and she was very weak and did not walk very well alone, rather to hold on, and . . . plaintiff would spend one-third of the day in bed."

The plaintiff's maid testified:

"witness has been with her [the plaintiff] ever since that time [the time the plaintiff was brought home after the first fall] . . . since that accident plaintiff has not been able to get around very much without assistance and . . . witness has been with her every day since, dressing her in the morning and undressing her and seeing that she is in bed . . . when plaintiff is up for a while witness then helps her in the office and then helps her back to bed . . . plaintiff could not stay up very long. After she was brought home from Emergency Hospital she was not able to get around at all even with witness' assistance until sometime in February and was in bed during that whole period. While confined to her bed she mostly suffered pains all the time. * * *

"There has never been a time since the fall in Kresge's store that plaintiff has been able to walk without assistance. Witness has been with her all the time and there has been no time when plaintiff was not apparently in discomfort or pain."

According to the testimony of the plaintiff's husband:

"After she was brought home [after the first fall] it was a couple of months before she was able to leave the bed, and when she left her bed she required more or less assistance, the maid helping her a good deal. 'Q. Could she walk alone? A. She could walk with difficulty and apparent pain.' "

The plaintiff herself testified that:

"Ever since the accident at the Kresge Company store, she has been obliged to have a maid who spends all her time with her from half past eight or a quarter of nine in the morning."

The plaintiff at the time of the second fall "thought, 'well, I am not very steady, but I think I can get it [the water bottle].' "

Urged in support of the view that the plaintiff, in respect of her second fall, was not negligent, is the following: The plaintiff "first began to try to work on patients about the middle of February 1934 . . ." "During the period between the fall at the Kresge store and the second fall in October 1934 she treated on an average of two people a day . . ." According to the plaintiff's physician:

"There were times when she felt better, sometimes. There was improvement. Sometimes she was, after arriving at home, permitted to attempt a little active motion of her own accord. * * *

" . . . In March the witness told the plaintiff that he wanted her to make every effort to move about that her strength permitted; 'that it was only as a result of active motion on her part that nature would ever restore the functioning of these glands [which the witness had elsewhere testified were supplying an insufficient amount of calcium to the system for bone healing], to a degree approximating normal; that the longer she remained immobile, the longer there would be no success in the union.' Plaintiff mentioned nothing to the witness from March until October when he saw her about any difficulty in her getting out of bed or moving around. As a matter of fact the plaintiff was not in bed during the whole period between March and October. 'She had been in bed a great deal of that period;

but it was my advice that she attempt to get out of bed and move about.' . . .

" 'Q. Do you know whether there was at any time during the period from March to October when she could have gotten around without assistance, at all? A. Yes, sir.

" 'Q. And how much of that time is that true? A. I cannot tell you, sir, except that I had occasion to see her several times as a friend. And speaking with her, I knew that she was moving then, to some extent at least, without assistance, but with considerable effort on her part.' * * *

" 'In my opinion the original injury was responsible for the subsequent fall in October 1934 by its productive instability.' "

The plaintiff's husband testified:

" 'Q. Could she walk alone? A. She could walk with difficulty and apparent pain.' After she was able to be removed from her bed she was ambitious and anxious to work and began working a few hours a day and continued that until she had a second fall. She was able to devote two or three hours a day after the accident, about half as much time as she had given to it before."

■ Granting the plaintiff the advantage of every legitimate inference, we think the evidence such that no reasonable juryman could fail to conclude that the plaintiff was negligent at the time of the second fall. The evidence is overwhelming to the effect that: The fracture of the plaintiff's hip had not healed. She knew it had not healed. She was unable to walk without assistance. When she tried to walk at the time of the second fall, she was consciously taking a chance. The plaintiff's own physician admitted that after the first fall "She never acquired that sense of equilibrium which was required for freedom of movement. Some motion could be attained, but it was always with the feeling that comes from an insecure foundation." The plaintiff's own daughter frankly stated that about two days before the second fall her mother was "extremely weak and could get around just by the help of someone at home." The evidence urged as supporting an inference that the plaintiff was not imprudent is so insubstantial that it cannot be said to satisfy the rule in the Federal courts that there must be more than a scintilla to take a case to the jury: The fact that the plaintiff was able to work on patients proves nothing as to her ability to walk because, as above appears, she sat on a cushion on a stool with a special support when so working. That she was permitted to attempt a little active motion on her own accord and advised to make every effort to move about that her strength permitted in order that nature would restore the functioning of her glands, is inconclusive as to the extent of motion which she actually was able to accomplish, and inconclusive as to whether at such times as she attempted motion, if there were such times, she had assistance immediately available. The physician's affirmative answer to the question "Do you know whether there was at any time during the period from March to October when she could have gotten around without assistance at all?" was frankly qualified by the physician himself —that is to say he admitted that his information came only from the plaintiff. On the subject of her ability to walk alone she testified to nothing directly, and on that subject the testimony of her family was, as above set forth, compellingly to the effect that she could not walk unassisted. If the physician's expression of opinion that "the original injury was responsible for the subsequent fall . . . by its productive instability" meant more than that the plaintiff's instability, caused by the first injury, contributed to the second fall, that is to say if it meant that nothing else contributed, i. e., the plaintiff's attempting, though afflicted with instability, to walk alone, then it was a conclusion not for him to make, because it was upon the ultimate question in the case.

■ We have considered the numerous authorities cited by counsel in the briefs, but we think it not useful to discuss them in detail. No cases are cited from this jurisdiction. The question whether on any particular issue there is evidence for a jury is a question which must be decided according to the best judgment of the reviewing tribunal on the particular record involved, that is to say, each case must rest largely on its own facts since there are usually such variations in the facts of others as to make them not persuasive. This is true of the cases especially urged by the plaintiff: In Hartnett v. Tripp, 231 Mass. 382, 121 N.E. 17, the plaintiff's second fall took place when he was getting

out of a wheel chair and one of his crutches slipped. It is an ordinary part of recovery from a fractured leg for a patient to use crutches. There was no showing that the plaintiff was negligent in the manner of use of the crutches; and the very fact of the use of crutches differentiates that case because crutches are a form of assistance, and in the instant case the plaintiff had no assistance. Smith v. Northern Pac. R. Co., 79 Wash. 448, 140 P. 685; Hoseth v. Preston Mill Co., 49 Wash. 682, 96 P. 423; Papic v. Freund (Mo.App.) 181 S.W. 1161; Wagner v. Mittendorf, 232 N.Y. 481, 134 N.E. 539, 20 A.L.R. 520, and Brown v. Beck, 63 Cal. App. 686, 220 P. 14, are also crutch cases. In Stahl v. Southern Michigan Ry. Co., 211 Mich. 350, 178 N.W. 710, the plaintiff's original injury was to the sciatic nerve. There were no fractures. Her second injury occurred while packing her suit case, which fell against her so that she lost balance and fell to the floor fracturing her hip. It could hardly be called negligent for such a person, without a fracture, to pack a suit case. Wieting v. The Town of Millston, 77 Wis. 523, 46 N.W. 879, and Conner v. Nevada, 188 Mo. 148, 86 S.W. 256, 107 Am.St.Rep. 314, were cases where the plaintiff after substantial recovery from a fracture, but with the injured limb still weakened by the original injury, received the second injury in an accident while riding in a buggy. It could not be held to be negligence, especially when horses and buggies were in common use, for a person convalescing from a fracture to ride in a buggy; and there was no showing that the buggies were negligently driven.

In accordance with the foregoing, the judgment of the trial court is

Reversed and the case remanded for a new trial.

Mr. Justice GRONER dissents.