**DISTRICT OF COLUMBIA, Appellant,**

v.

**Virginia ALI–BROWN, Appellee.**

**No. 86–1365.**

District of Columbia Court of Appeals.

Submitted Dec. 3, 1987.

Decided July 28, 1989.

Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., filed a brief for appellant.

Patrick J. Christmas and Elizabeth H. Hamlin, Washington, D.C., filed a brief for appellee.

Before BELSON and STEADMAN, Associate Judges, and REILLY, Senior Judge.

PER CURIAM:

Plaintiff/appellee Virginia Ali–Brown was awarded compensatory damages for knee injuries she sustained by falling in a hole in a District of Columbia sidewalk, and

---

in a subsequent fall at her place of employment. Plaintiff contended this second fall (which resulted in serious additional injury) was caused by a sudden buckling of the injured knee and was thus a direct result of the initial accident. Before us, appellant District of Columbia claims the trial court erred in not giving the requested standard and special contributory negligence instructions with regard to the office fall, and in otherwise frustrating such a defense.

■ As the case developed, the District had no serious cause to complain with respect to the instructions. Following the refusal to give the contributory negligence instruction, the trial court agreed to give the following instruction relating to the liability of the District for the second fall:

> and if you further find that on July 23rd, 1981, Plaintiff *while exercising due care* was caused to fall as a direct result of a weakness or physical instability produced by the injuries sustained in the first fall, then Plaintiff is entitled to recover for any injuries and damages proximately caused by the second fall, as well as those caused by the first. (Emphasis added.)

This instruction was a close adaptation of that approved in *S.S. Kresge Co. v. Kenney,* 66 App.D.C. 274, 86 F.2d 651 (1936), as a correct statement of the law. The instruction in that case required that the plaintiff be acting "as an ordinary and reasonable person" at the time of the subsequent injury. *S.S. Kresge Co. v. Kenney,*

*supra,* 66 U.S.App.D.C. at 275, 86 F.2d at 652. *Cf.* RESTATEMENT (SECOND) OF TORTS § 460 (1965). At the District's request, to which the plaintiff did not object, this wording was changed to "while exercising due care." [1] Thus viewed as an element of proximate cause,[2] the proof of due care was for the plaintiff to show, *District of Columbia v. Cooper,* 483 A.2d 317, 321–22 (D.C.1984).[3] In short, under the trial court's express instructions, liability for injuries resulting from the second fall was contingent on the jury's finding that plaintiff acted with due care, and, as indicated hereafter, the District did indeed vigorously argue its tripping theory in closing argument to the jury.

■ Nor can we agree with the District's assertion that the trial court improperly "frustrated" the District's presentation of its position with respect to the plaintiff's asserted lack of due care in connection with the second injury. A fair appraisal of the record demonstrates that the trial court gave the District of Columbia ample opportunity to develop its position that Ms. Ali–Brown's own lack of due care for her safety was a cause of her second injury. What the District complains of appears in fact to be nothing other than a careful governance of the conduct of cross-examination and closing argument in which the District of Columbia was permitted to utilize to its advantage precisely what material there was in the record helpful to its cause, but was not allowed to overstate that material.

---

1. Although neither party so requested and therefore has no cause to complain, the instruction as given might be slightly improved by following the *Kresge* model in separating out the two findings required of the jury. The wording in *Kresge* was that "if you further find from the evidence that the plaintiff acted as an ordinary and reasonable person ... in trying to get a drink of water *and* that while so doing she was caused to fall as a direct result [of the prior injury] ... then you are instructed that she is entitled to recover for the injuries sustained [in the second incident]." *S.S. Kresge Co. v. Kenney, supra,* 66 U.S.App.D.C. at 275, 86 F.2d at 652 (emphasis added).

2. It has been noted that the due care requirement is necessary "both from the point of view of contributory negligence, and that of proximate cause." W. KEETON, PROSSER AND KEETON ON

THE LAW OF TORTS § 44 at 310 n. 90 (5th Ed.1984). Likewise, in RESTATEMENT (SECOND) OF TORTS § 460 comment b (1965): "Usually in such cases [of careless activity] the contributory negligence of the [plaintiff] will bar his recovery; but apart from such a defense, the [tortfeasor's] conduct is not a legal cause of the second injury." *See generally* Vance, *Liability for Subsequent Injuries,* 42 TEX.L.REV. 86 (1963). *Cf.* the doctrine of "avoidable consequences." PROSSER AND KEETON, *supra,* at 458–59.

3. Thus, not only did the District suffer no substantial prejudice from the fact that the trial court did not employ the words "contributory negligence," it indeed benefited from the imposition on the plaintiff of the burden of proving the causal relationship between the original fall and the injuries incurred as a result of the second fall.

The trial court placed no obstacle in the way of the District's development of its position with respect to the cause of the second tripping or fall. The District was allowed to cross-examine Ms. Ali–Brown fully on this issue. It was free to offer exhibits or other witnesses on that question, although it did not do so.

The only asserted shortcoming is the manner in which the trial court limited the District's use of the theory of how the second fall occurred, purportedly given by Ms. Ali–Brown to Dr. George J. Schonholtz and to Dr. Jeffrey I. Goltz or a member of his staff.

The plaintiff introduced early in the trial Exhibit No. 55, a report of Dr. Schonholtz which contains under the heading "History" the statement that after the first injury and resultant arthroscopy, plaintiff "returned to work and probably misstepped or tripped on an extension cord, reinjuring her knee." This "History" reveals by its context that it in no way purports to be a verbatim statement of what Ms. Ali–Brown said to the physician; indeed, it contains so much technical information that it is obvious that its sources go beyond the utterances of Ms. Ali–Brown. The trial court twice sustained objections when the District in cross-examination tried to present the office incident as a "tripping fall," or "tripping" over cords. While it is true that the trial court did not permit the District in cross-examining Dr. Schonholtz to refer to the incident as a "tripping fall," the District was permitted to develop the fact that the plaintiff had had numerous discussions with Dr. Schonholtz concerning the circumstances of the July 23rd fall at her office, and that his initial impression was that she had tripped. The trial court did not hamper the District's efforts to bring out precisely what had happened with respect to the taking of the history set forth in the report or its efforts to place before the jury the fact that based on discussions with the plaintiff, Dr. Schonholtz received the impression that she had tripped.

Similarly, when counsel for the District was cross-examining Dr. Goltz, the trial court declined to allow counsel to refer to the second accident as a "tripping over cords", but indicated that counsel would be allowed to describe the occurrence "as set forth in the statement."

The trial court made it clear to counsel that the reason it did not permit the District to go beyond a reference to what the statement of history contained was that counsel had not asked the doctors to state exactly what Ms. Ali–Brown had told them by way of history. The trial court so informed counsel while Dr. Goltz was on the witness stand. Therefore, the court limited cross-examination to precisely what the defense had available to it, the statement of history based upon discussions with a doctor which set forth the impression which the doctor took from the conversation. The District was not precluded from developing that both the doctors had gained the impression from the history that she had sustained her second injury as a result of tripping, and the jury was made aware of that.

Finally, the District complains of the trial court's sustaining an objection during the District's closing argument to the flat assertion that the tripping description of the doctors was based on the plaintiff's description. Counsel for the District immediately rephrased the assertion as representing the impression that the doctors had received from her, and continued to forcefully argue the District's theory without further interruption, including use of the word "tripping."

The trial court allowed counsel for the District as much latitude on cross-examination and closing argument as he had shown himself entitled to. If the fact that Dr. Schonholtz discussed the cause of the second injury which plaintiff justifies the inference that it was she who told him she tripped, the District was not prejudiced because the jury was told of the discussion and the contents of the document and could have drawn the inference itself. In any event, even if what occurred should somehow be deemed a limitation on the presentation of the District's theory concerning the second fall, it was so minor in nature,

and so inconsequential in the context of the trial, that it should not lead to a reversal.[4]

*Affirmed.*

REILLY, Senior Judge, dissenting:

Unless we are to disregard controlling precedent setting the standard of care to avoid reinjury required of persons handicapped by a prior injury, *S.S. Kresge Co. v. Kenney*, 66 App.D.C. 274, 86 F.2d 651 (1936), I think we are compelled to hold that the trial court committed reversible error when it refused to grant the special instruction which would have put to the jury the issue of whether the injuries resulting from plaintiff's fall in her place of employment "were contributed to by the plaintiff's negligence on that day."

In *Kresge*, the appeals court was confronted with a situation where a woman not completely recovered from a pelvic (pubis) fracture incurred by a stairway fall in defendant's shop, and unable to walk without assistance, stepped out of her bed one night nine months later to pick up a glass of water from a bedroom shelf, fell backwards and broke her back. The jury held that the negligence of the shopkeeper was responsible for the second fall, as well as the first, and awarded damages for both injuries. Although the trial court instructed the jury—unlike the charge given in the instant case—to determine whether the "plaintiff acted as an ordinary and reasonable person might ... in trying to get a drink of water *and* that while so doing she was caused to fall as a direct result of a weakness or physical instability produced by the injuries she sustained ... in the defendant's store," *id.* at 275, 86 F.2d at 652 (emphasis supplied), the appellate court, conceding the correctness of these instructions, nevertheless set aside the verdict on the ground that "no reasonable juryman could fail to conclude that the plaintiff was negligent at the time of the second fall." *Id.* at 278, 86 F.2d at 655.

Quoting with approval a case defining proximate cause as "that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury," the *Kresge* opinion noted that "the application of these principles to a situation where one injury alleged to have been caused by the negligence of another is succeeded by a further injury alleged to be the result of the first, the law regards negligence on the part of the injured person which *contributes to the further injury as an efficient intervening cause.*" *Id.* at 275–76, 86 F.2d at 652–63 (emphasis added).

In the case before us, plaintiff, while still undergoing medical treatment for a painful leg injury incurred four months earlier when she stumbled into a catch basin which the District highway department had failed to keep safely covered, went back to her clerical job in a federal agency before her injury had healed and at a time when her knee was prone to "buckle" or "giveway"[1] if she attempted to walk and, therefore, needed to use her crutches to avoid falling. According to her own testimony, her knee became so swollen one day that she decided to leave her office, stood up from her desk without using her crutches to support her, pushed her chair away, and immediately fell to the floor. The resultant injury was much more severe than the original one, as it required her to undergo a series of major and expensive surgical operations which left her with permanent scars and a limp. The jury, like the one in *Kresge*, held the defendant (the District) liable not only for the sidewalk injury, but also the further injury sustained in the office fall and returned a verdict for damages in the amount of $475,000.

The District argues that because of the striking resemblance between the instant

---

**4.** As discussed in the dissent, plaintiff (a federal employee) filed a workers' compensation claim for the second injury. Payment of the judgment by the District may be subject to the provisions of 5 U.S.C. § 8132 (1982) requiring that no proceeds be paid to a beneficiary without first satisfying the interest of the United States in receiving a refund of any compensation paid by it.

**1.** These terms were used synonymously by witnesses during trial, including the medical experts.

case and the factual situation in *Kresge*, it was entitled to an instruction which made the jury aware that it should determine whether plaintiff's own carelessness was a contributing factor in the second fall. Unlike *Kresge*, it does not assert that the record required a directed verdict, but it does assign as error the refusal of the court to give the following instruction:

If you believe that injuries to plaintiff after July 23, 1983 were contributed to by the plaintiff's negligence on that day, then the defendant's actions were not the proximate cause of such subsequent injuries, and your verdict must be for the defendant.

One rule which we have recognized time and again in both civil and criminal cases is that the defense is entitled to an instruction which expresses its theory of the case. *See, e.g., Jones v. United States*, 555 A.2d 1024 (D.C.1989); *Graves v. United States*, 554 A.2d 1145 (D.C.1989), and cases cited therein; *District of Columbia v. Peters*, 527 A.2d 1269, 1274 n. 4 (D.C.1987); and *Sinai v. Polinger Co.*, 498 A.2d 520, 524 (D.C.1985). As the *Graves* opinion emphasized: "Although the instruction need not be framed in the identical language requested, the failure to give an instruction where some evidence exists to support it constitutes reversible error." *Graves, supra,* 554 A.2d at 1147.

When a contributory negligence instruction is requested, our court in *Sinai, supra,* 498 A.2d at 524, stated the circumstances under which such instruction is appropriate.

In evaluating the propriety of a contributory negligence instruction, the trial court must focus upon the objective reasonableness of the plaintiff's conduct, and must determine whether the defendant has presented evidence that the plaintiff's behavior in encountering the risk departed from the standard of care that is to be expected of the reasonable person in the plaintiff's position. The plaintiff's departure from the normal standard of conduct (his "fault") deprives him of the right to assert that the defendant was also at fault. A contrib-

utory negligence instruction is appropriate only if the defense has borne its burden to put forth some evidence upon which a jury could find that the plaintiff, by encountering the risk ... departed from an objective standard of reasonable care.

Thus, the sole issue before us is whether the court was correct in ruling that there was no evidentiary basis to justify giving the second proposed instruction. The District's position is that its request was indeed supported by evidence, and that other rulings of the court frustrated its attempts to demonstrate that plaintiff's own admissions revealed contributory negligence. Plaintiff contends, however, that the proffered instruction lacked any support other than a mere scintilla of evidence.

In view of the fact that both parties agree upon the question to be decided, it seems to me incumbent upon us to review the entire record to ascertain whether requisite evidence for such instruction was actually presented. Instead of resolving this question, however, my colleagues avoid it by holding that because of another instruction given by the trial court the District has no serious cause to complain about the denial of its requested instruction on contributory negligence. This was not a thesis advanced by either party. In my opinion, such instruction was harmful rather than helpful to the defense, for its wording might well have left the jury with the impression that due care on the part of the plaintiff was an established fact, and therefore not an issue which the jury should decide.

The instruction relating to the liability of the District for the second fall was:

if you further find that on July 23rd, 1981, Plaintiff while exercising due care was caused to fall as a direct result of a weakness or physical instability produced by the injuries sustained in the first fall, then Plaintiff is entitled to recover for any injuries and damages proximately caused by the second fall, as well as those caused by the first.

While this was indeed adapted from the charge quoted and deemed correct in the

*Kresge* opinion, the text, as the majority opinion candidly recognized, differs from the *Kresge* model because the trial court omitted the word "and." The jury was thus not put on notice that it would first have to determine whether the plaintiff was exercising due care when the second fall occurred, before it could consider whether or not the cause of the fall was the direct result of the prior injury. For this reason, the change in phraseology was more than a mere imperfection.[2]

The record shows the instruction as given was one requested by plaintiff. Thus, it was not intended as curative of the court's rejection of the defense proposed charge, but rather to dispel any notion that a tortfeasor, while liable for the injuries first caused by its negligence, is immune from further liability for injuries occurring at a place or time remote from the original accident. Plainly, the instruction, by omitting any reference to contributory negligence, did not express defendant's "theory of the case."

Accepting, however, the majority's analysis that the effect of the instruction was to require the plaintiff to prove due care, I find somewhat inconsistent the absence of any comment in the opinion on the issue of whether plaintiff met that burden. My assessment of the record is that plaintiff's evidence revealed not only a failure to meet this burden, but that her own lack of ordinary caution contributed to the second injury.

The conduct characterized by the *Kresge* court as negligent (*i.e.*, negligent *per se*) consisted of an attempt by the plaintiff to walk a few steps inside her own bedroom when she knew that the hip fracture had not healed and was aware of her inability to walk safely without assistance. Hence, the court concluded that, "when she tried to walk at the time of the second fall she was consciously taking a chance." *Kresge, supra*, 66 App.D.C. at 278, 86 F.2d at 655.

If such conduct amounted to negligence *per se*, I think we are precluded from holding that the record now before us was so barren of evidence (or contained no more than a scintilla) that the refusal to instruct on contributory negligence was proper.

According to plaintiff's own testimony, her knee "buckled" 15 or 20 times again in the next two months (*i.e.*, between June 6 and June 25, when she went to Sibley Hospital for an x-ray arthroscope that disclosed no significant injury). When this happened, plaintiff said that if no one was there to assist her, she fell "kaput," the leg giving out like a dishrag. Her neighbor and friend, Miss Clemmons, the practical nurse who had administered first aid, corroborated plaintiff's own description of her instability on her feet, saying she always tried to walk beside her or go down steps in front of her, "because we never knew when this knee would give way ... it has happened several times."

Because plaintiff was pressuring her first surgeon, Dr. Goltz, to allow her to return to work, he let her do so after the June examination, after prescribing crutches. But even with this equipment, she continued to fall down when her knee gave way—on one occasion as she was leaving her office building. Subsequently, some two weeks later, she testified that her knee buckled again when she was preparing to depart her office, causing her to fall.[3] She screamed while she was on the floor. Two of her co-workers came and assisted her in

---

2. I am not sure that it is entirely accurate to say that as *neither* party requested that the proposed instruction conform exactly to the *Kresge* charge, it has no cause to complain. The transcript of the bench colloquy on instructions discloses that after defense counsel had succeeded in getting the court and opposing counsel to agree to the substitution of "while exercising due care" for the *Kresge* phrase "acting as an ordinary and reasonable person," the court gave the parties to understand that with this modification it would use the language that was in the [Kresge] case, except for changes of dates and factual references. But the charge as ultimately given—apparently a paraphrase of a headnote—deviated from the *Kresge* text in the one respect which defense counsel had no reason to foresee.

3. Her second surgeon was of the opinion that the injuries sustained in the second fall were responsible for the lasting damage to plaintiff's knee, requiring surgery to remove a broken cartilage (outer miniscus), further operations and treatment resulting in a permanent, partial disability, *i.e.*, a limp.

getting up. Later when asked to describe this mishap in more detail, she said that as she was getting up from her desk, she moved her chair to the right. When getting back to her place to pick up her crutches from underneath the desk, her leg gave out. She denied that she had tripped on the extension cord to her typewriter which was also beneath her desk. It is thus apparent from her own testimony, that she had risen from her chair and pushed it away without using her crutches to support her. She did not attempt to utilize her crutches until after she fell, then tried to use one to get up again, but was unable to do so because it was entangled by the cord.[4] All this happened just a minute or two after she noticed that her knee had swelled again and decided to quit work for the day.

Earlier in the trial, the defense in cross-examination elicited testimony from plaintiff's own surgeon that if he prescribed crutches, he expected patients to use them and conceded that such use would "prevent any kind of falling from buckling." This evidence, apparently overlooked by the trial judge—perhaps because counsel did not mention it—in rejecting the requested instruction, was highly significant. Here we have a situation where a woman, like the unfortunate patient in *Kresge*, was aware of the ever-present danger of a fall if she tried to stand or walk without support. Thus, her failure to utilize the device intended to safeguard her against this danger could scarcely be deemed an exercise of due care under the *Kresge* holding, for it appeared she was "consciously taking a chance." At the very least, this was an issue warranting jury consideration.

It is true that the District, in its appellate brief, did not predicate its defense of contributory negligence upon plaintiff's own description of the fall, but upon other evidence which contradicted her version of the accident. According to appellant, plaintiff fell not because her knee buckled, but because in walking by her desk she tripped over the cord, twisted her knee, and then fell. Apparently, both sides assumed that any employee who tripped over a cord located in its customary and familiar setting in her own office was negligent—particularly if that person was depending on crutches to avert the possibility of a fall. Hence, the defense was quick to object, whenever defense counsel in cross-examination or summation referred to the reinjury of the knee as a "tripping fall" or "a tripping over cords." These objections were invariably sustained—rulings the District assign as error.

A major support for its position that plaintiff herself admitted that tripping over a cord was the cause of her fall was a statement in a document introduced by plaintiff's counsel, a report by her second surgeon, Dr. Schonholtz, which summarized his diagnosis of the second injury and the subsequent treatment. It contains the entry: "[S]he returned to work and promptly misstepped or tripped on an extension cord, reinjuring her knee."[5]

---

**4.** According to her testimony, the electric cord had been placed there to activate a typewriter located to the left of her desk chair. She was aware of its position and analogized its placement with that of a similar cord she saw in the courtroom hooked up to a plug running under the table reserved for defense counsel. Thus, the trial judge completely missed defendant's point in her memorandum denying the motion to vacate, n.o.v., when she said that even thought the location of the cords in plaintiff's office might be attributed to negligence of the agency which employed her, such showing under the doctrine of joint tortfeasance did not relieve the District of responsibility for the office fall. At no time did either plaintiff or defendant contend the placement of the cord was unusual, let alone hazardous. What the District relied upon was that her own admission to her surgeon and the "report" to her own agency (*i.e.*, the worker's compensation claim) revealed contributory negligence on plaintiff's part.

**5.** In disparaging the District's right to a contributory negligence instruction, as being founded on a mere scintilla of evidence, plaintiff's brief describes this statement as at most "hearsay within hearsay within hearsay." Counsel would apparently have us overlook the fact that it was he, not his adversary, who introduced this document. It was admitted as a business entry, a familiar exception to the hearsay rule. Plainly, any person who introduces a document for the purpose of establishing as fact some of the statements therein contained, is estopped from asserting that other statements in the same document are not entitled to equal weight.

When testifying, Dr. Schonholtz attributed this entry to something either he or some member of his staff had learned from the plaintiff herself, when she visited his office after being dissatisfied with the results of treatments by her first doctor, Dr. Goltz.

On the stand, plaintiff denied making any such admission to Dr. Schonholtz or his staff. Her explanation that his report was due to some piece of misinformation he picked up from the records in the office of Dr. Goltz was completely refuted by the testimony of the latter. He remembered that plaintiff said nothing to him about any second fall. His nurse did discover about a week later, that the injury for which plaintiff was then being treated was a "reinjury." The entry to that effect, however, said nothing about "tripping" or any electrical cord. Obviously, whatever Dr. Schonholtz or his staff learned about the second fall did not come from anything in the Goltz office records. Her testimony to the contrary, as well as her vivid account of being carried by fellow workers and transported to her doctor's office on the day of the office fall, may well have been a fabrication, as the District's brief puts it.[6]

Hence, the only possible source of the information upon which Dr. Schonholtz based his description of the second accident in Exhibit 55 was plaintiff herself. While he did not recollect her precise words, he did testify that he and his associates had gone over the history of this fall with her several times before he wrote the hospital discharge summary, i.e., in which he withdrew a correction made earlier, and let the finding about "tripping" stand. On this state of the record, the court's warnings to defense counsel in closing argument, when he characterized the second fall as caused by tripping, were not only error, but preju-

dicial error, for the jury could well have inferred that the District, by distorting the evidence, was clutching at straws.[7]

The court in its rulings also ignored a grudging admission by the plaintiff on the witness stand that provided additional evidence showing that the second accident was the result of tripping over an electrical cord. After a questionable ruling which prevented the jury from learning that plaintiff had filed a workers' compensation claim for the office fall, and the defense from introducing the document, the court permitted counsel to ask plaintiff what she had written in a report to her employer (Department of Energy) about this accident. She answered: "I reported that my knee gave way and that my foot or crutches got tied up in extension cords." To another question on the form concerning medical treatment, she said her answer was "surgery."

It should be noted that by referring to an entanglement with the cord as a factor in the fall, the plaintiff in her claim form deviated significantly from the description of the incident she gave at trial. Her testimony emphasized to the jury that contact with the cord did not occur until after the injury was sustained, i.e., while she was lying on the floor and attempting to get up. But in making out a claim for workmen's compensation, plaintiff had no reason to draw attention to having gotten "tied up in extension cords," if this was only an aftermath of the fall, rather than its immediate cause.

As plaintiff had retained her lawyers long before the second fall and relied on their advice in the selection of her doctors, it can be inferred that the choice of words in the claim form was the product of legal advice. Contrary to what counsel represented to the trial judge, a person weak-

---

**6.** The Goltz records disclose that plaintiff did not appear in his office until the day after the second fall—an event she concealed from him on this crucial visit.

**7.** In the light of Dr. Schonholtz's reference to discussions of the accident with the patient, the court was plainly mistaken in saying that this witness "only indicated what he recorded ... 'Nobody ever attributed those statements to

her.'" Yet the majority accepts this bench comment as accurate and hence, a justification for later rulings imposed on the defense which might have led the jury to infer that the occurrence of a tripping accident was a mere "impression" on the part of her doctor, based perhaps on speculation rather than an admission of plaintiff.

ened by a previous injury or sickness is not entitled to workmen's compensation for a fall on employer's premises unless something in the workplace itself contributes to the risk or aggravates the injury. *See* 1 A. LARSON, WORKMEN'S COMPENSATION LAW § 12, at 3–308 ff (1985). It is not enough under the Federal Employees' Compensation Act to show that an employee was at work when he collapsed, if the cause of such accident was not job related. *See Wallace v. United States*, 669 F.2d 947 (4th Cir.1982). Had plaintiff, in filing her compensation claim, attributed her second injury solely to physical instability resulting from the sidewalk fall—the position she took in court—such claim would have been rejected. Therefore, it was necessary to show that the injury was caused in part by the workplace environment, *e.g.*, contact with some item of office equipment, even though this meant conceding conduct susceptible of being viewed as negligence on the part of the victim—fault being irrelevant to a compensation claim.[8]

In sum, there was far more than a scintilla of evidence in this case to support the request for a contributory negligence instruction. Indeed such evidence was strong. Accordingly, the denial of the District's requested charge amounted, in my opinion, to reversible error.

---

8. Had the District preserved its objection, we would have been compelled to deem error the broad exclusion of evidence with respect to documents incident to plaintiff's federal compensation claim. Defendant's counsel was trying to introduce the claim form executed by the plaintiff, not to show that compensation had been paid, but to impeach the witness by (1) demonstrating that contrary to her own account of the office injury she had previously reported the knee collapse as stemming from entanglement by foot or crutch with a piece of office equipment, and (2) had attributed the necessity for surgery not to the catch basin accident, but to a *separate* work-related injury. Obviously, this ruling put defense counsel at a serious disadvantage in trying to establish that the second fall was due to tripping. The rule that excludes

evidence as prior payment of worker's compensation in damage actions caused by third-party tortfeasor, has nothing to do with introducing evidence adduced by the claimant in the administrative proceedings to show inconsistency or even perjury when such claimant has taken the stand as plaintiff in a subsequent court action.

Moreover, in urging the collateral consequence rule, plaintiff's counsel did not indicate to the court that he recognized that the federal government had a lien on the proceeds of any judgment for damages he might obtain for plaintiff, or that he had notified either the District or the court that because of another provision in the compensation statute, no judgment should be paid his client until the interest of the United States was satisfied. 5 U.S.C. § 8132 (1982).