## HOWARD v. SWAGART et al.

### No. 9409.

United States Court of Appeals
District of Columbia.

Argued March 12, 1947.

Decided May 5, 1947.

2 1942, 76 U.S.App.D.C. 297, 130 F.2d 905.

652

Mr. Earl H. Davis and Mr. A. Arvin Lynn, both of Washington, D. C., with whom Mr. Martin Mendelsohn, of Washington, D. C., was on the brief, for appellant.

Mr. Austin F. Canfield, of Washington, D. C., with whom Mr. Julian H. Reis, of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

### CLARK, Associate Justice.

This is an appeal from the action of the District Court of the United States for the District of Columbia entering judgment for appellees, defendants below, and setting aside a verdict of the jury in favor of appellant, plaintiff below, in accordance with Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Appellant was injured when she was struck by an automobile driven by Elbert W. Cherry, who was neither its owner nor its authorized user. It is necessary to record a detailed account of the facts leading up to Cherry's securing possession of the car in order to present a complete picture of the case essential to a proper disposition of the appeal, and in order to portray clearly the legal relationship of the several parties involved.

In the afternoon of Thursday, December 7, 1944, Lawrence A. Baker, the owner of a certain maroon Lincoln Zephyr sedan, parked his automobile at the S & H Parking Center located in the 1500 block of Eye Street, Northwest. He had a monthly storage contract with the garage which gave him the privilege of taking his car in

and out as he wished, in contrast to the daily customer who paid a per diem rate and was given a claim check on each occasion his car was parked. On this particular instance, Baker instructed the garage employee present to close the car windows because he was going away for a day or two. As required by the garage, he left the key in the ignition switch, but took all other keys.

Customers of the Parking Center, daily and monthly, are not permitted to park the car themselves, but simply drive into the garage through its single entrance, leaving the car for one of the garage's employees, referred to as hustlers or parking attendants, to park in the place assigned to it on one of the various floors. When a customer calls for his car, he is required to wait on the ground floor until a hustler brings the car down to the garage's single exit. Both the entrance and the exit are on Eye Street, the entrance at the east end of the garage and the exit at the west end. The garage manager's office is beside the entrance and the cashier's office is beside the exit.

During the period here involved, the garage was operated on a 24 hour basis. Between 8:00 o'clock a. m. and 6:00 o'clock p. m., it was in charge of Mr. Wine, the day manager. Mr. Smith, the night manager, was in control the remaining hours. Wine generally had seven or eight employees on duty with him, including parking attendants and car washers. One such car washer was Elbert W. Cherry. Before going off duty, Wine would have the cars belonging to daily customers brought down from the upper floors to the first floor to facilitate the work of the night crew. The monthly cars, which had designated places mostly on the fourth and fifth floors, were brought down only when the owners came for them. Smith had only two employees stay with him part time, a parking attendant named Wyatt Clinton, who came on duty shortly after 5:00 o'clock p. m., and remained until 10

o'clock p. m., and a cashier, who also remained on duty until 10:00 o'clock p. m.

Clinton, who had been employed by the Parking Center for approximately two months prior to December 7, 1944, worked for the War Department during the day and performed his part time duties at the garage during the evening. Cherry had been employed by the garage two or three weeks before December 7, 1944. He had been sent there by the United States Employment service. At the time he was interviewed for the position by Wine, who at that time was in charge of hiring, firing and supervising employees at the garage, he had with him the standard referral card required by government regulations issued under the Presidential Proclamation governing employment stabilization. He was employed as a day time car washer with the understanding that he would sometimes be called upon to work overtime either to wash cars or to act as a parking attendant. Wine testified that at the time Cherry was hired they accepted all employees referred to them by the United States Employment Service without making any independent investigation as to their background and no independent investigation was made concerning Cherry. He further testified that if he had known of Cherry's past criminal record [1] he would not have accepted him as an employee.

On the evening of December 7, 1944, Cherry was asked to work overtime washing cars. The wash rack was located on the second floor directly to the rear of the garage exit. During the course of the evening, Smith, the night manager, saw the Baker car near the wash rack. Cherry testified that while he did not see the car there, he heard Smith upbraid Clinton for bringing the car down from its usual spot on the fourth floor, and order him to return it to its proper place. Smith testified that he never followed up to see if his order was carried out.

On this same evening, Cherry and Clinton finished work at 10:00 o'clock p. m.,

---

[1] It was brought out in the evidence that in September, 1944, Cherry was convicted of embezzlement, given a sentence of from six to eight months and put on probation.

and checked out together.[2] Cherry met his wife and baby who were waiting for him outside the garage and Clinton offered to drive them home. Cherry expressed some doubt as to Clinton's having a car but Clinton assured him that he had one parked at 16th and Eye Streets. They walked to that intersection where a maroon Lincoln Zephyr sedan was parked. Clinton informed Cherry that he had purchased it from his winnings in the numbers game. The pair took Cherry's wife and baby home and then returned to Clinton's home where they had a few drinks after which Cherry walked to his home.

The next morning, Friday December 8, 1944, Cherry, while walking to his work, passed Clinton's home where the latter was sitting on the steps. The car was parked nearby. Cherry asked Clinton to lend him the car and Clinton agreed. Cherry did not take the car then, but proceeded on to work where he was told by Wine that there was no work for him that day and that he could check out. He then returned for the car, picked up two girls on Ninth Street and while he was driving them about struck appellant with resulting injury. After taking appellant to the hospital, Cherry called Clinton and it was then, according to his testimony, that he first found out the car had been stolen by Clinton.

Appellant named as defendants in her action the present appellees, Swagart and Hartig, who own and operate the S & H Parking Center, and Baker, the owner of the car. The court directed a verdict in favor of Baker at the close of appellant's evidence and no appeal has been taken as to him. Appellees moved for a directed verdict after appellant's opening statement, at the close of appellant's evidence and at the conclusion of all the evidence. These motions were all denied. The jury returned a verdict for appellant for $7,500.00 and judgment was entered thereon. Appellees moved for judgment notwithstanding the verdict and in the alternative, for a new trial. The court overruled the latter motion while granting the motion for judgment notwithstanding the verdict, and ordered that judgment be entered in favor of appellees. This appeal followed.

Giving full effect to the principles established by decisions of the Supreme Court and of this court[3] for reviewing the action of the trial court in granting appellees' motion for judgment non obstante veredicto, we proceed to a determination of whether, as a matter of law, the evidence presented by appellant failed to make a case and, therefore, a verdict in appellees' favor should have been directed.

Appellant's position is that under the evidence the jury was warranted in finding that appellees were negligent in three respects, first, in failing to remove the ignition key from the Baker car; second in employing Elbert W. Cherry without investigating him; and third, in failing to provide and maintain adequate supervision and control over the cars left in their custody and control. Appellant further asserts that the jury was warranted in finding that appellees' negligence in any or all of the above respects proximately resulted in the removal of the Baker car from the premises and the injury to appellant.

Appellant relies on two decisions of this court to support her right to recover against appellees in this action. In the first of these cases, Ross v. Hartman,[4] we held that an owner of a vehicle was liable to a plaintiff who was injured when struck by the vehicle driven by an intermeddler who wrongfully drove it from a public alley where it had been left by the owner's agent, unattended, with the key in the ignition switch, in violation of a traffic regulation. In the second of these cases, Schaff v. Claxton,[5] we extended this liability to the owner of a vehicle where his employee left the vehicle unlocked with the key in

---

[2] The only testimony as to the events happening between this time and the time of the accident was offered by Cherry who appeared as a witness for appellant. Clinton died before the trial.

[3] Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Shewmaker v. Capital Transit Co., 79 U.

S.App.D.C. 102, 143 F.2d 142; Simmonds v. Capital Transit Co., 79 U.S. App.D.C. 371, 147 F.2d 570.

[4] 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080.

[5] 79 U.S.App.D.C. 207, 144 F.2d 532.

the ignition in a private parking space beside a restaurant not a "'public space' within the meaning of the ordinance" requiring vehicles to be locked, and a third party in attempting to move the vehicle injured the plaintiff.

We do not think there is any justification to extend the holdings of these decisions to the circumstances of the case at bar. While such an application is possible, it is not practicable or justifiable, and would necessitate, and result in, a strained construction of the legal concepts pertaining to negligence and proximate cause. Dealing with the causation aspect first, this court has defined the proximate cause of an injury to be "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." S. S. Kresge Co. v. Kenny.[6] The effect of our decisions in the Ross and Schaff cases was that a wilful, malicious and criminal act of an intermeddler was not an "efficient intervening cause" in the circumstances there presented where the action was between the injured party and the owner of the car, and where the owner was held responsible. We are urged, assuming for the moment negligence on the part of appellees, to extend that legal responsibility to a situation where there is added a subsequent intervening cause coming into existence nearly twelve hours after the criminal act which constituted the original intervening cause, and involving not the owner of the vehicle, but his bailee. We feel constrained to oppose such an extension to the law of liability. It cannot fairly be said that this court meant, by the Ross and Schaff decisions, to impose liability on the owner, or here the bailee, of an unlocked car for the negligent action of every person, other than the thief, driving it subsequent to the theft. In the case at bar, the injury to appellant, coming as it did after the car had remained at rest for nearly twelve hours after the original intervening cause and had been set in motion only by a subsequent intervening cause,

cannot be held to be the "natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Milwaukee & St. Paul R. Co. v. Kellogg.[7] There was in this case not a scintilla of evidence to indicate a "succession of events so connected as to make an entire whole, without any new intervening cause." Munsey v. Webb.[8] We hold that the circumstances existing here are outside the realm of those from which a jury could reasonably find that the negligence of appellees was the proximate cause of appellant's injury, and the trial court was correct, having submitted the cause to the jury, in setting aside a verdict in appellant's favor and entering judgment for appellees.

In this disposition of the case, it is not necessary for us to discuss the three acts which appellant contends constituted negligent action on the part of appellees, but because of the character of the proceedings in the trial below resulting in the setting aside of a jury verdict, and the views expressed by the trial court concerning this aspect of the case, we think it desirable to record our own views on the matter. The trial court stated in his opinion: "My holding is that there isn't enough evidence in this case to which can be applied the law that would justify holding these garage defendants responsible for the subsequent traffic accident and injury to the plaintiff." With this we agree. Turning to the specific acts alleged we hold that, in this jurisdiction, leaving a car unlocked in a private parking-lot garage does not constitute negligence. It is common knowledge that the standard custom and practice of private parking-lot garages is to require the leaving of the key in the ignition switch of cars parked on the premises. This is not only for the convenience of the garage attendants in moving the car about to allow the parking and removal of other cars, but for the convenience of the car owner in having the car delivered to him as soon as called for, and for the further protection of the car

---

[6] 66 App.D.C. 274, 86 F.2d 651.
[7] 94 U.S. 469, 24 L.Ed. 256.

[8] 37 App.D.C. 185, affirmed 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162.

owner in having his vehicle easily removable by the garage attendants in case of fire or other emergency. Appellant has not offered evidence tending to establish a duty in appellees to exercise a higher degree of care than is required of others in this business. This action is not negligence.

 Neither do we think that hiring Cherry as a car washer and part time parking attendant without an independent investigation as to his reliability constitutes negligent action[9] in view of the fact that he was taken upon the recommendation of the United States Employment Service. But to carry this point a step further, in alleging this negligence, appellant ignores her own evidence, presented through her witness, Cherry, that it was Clinton, not Cherry, who stole the car. And there was no evidence offered to show otherwise. Appellant did not make Cherry a party defendant in this action, although he was the driver of the car at the time of the accident, but utilized him as a principal witness on whose testimony she heavily relied for support of her claim against appellees. She did not call him as an unwilling or hostile witness under Rule 43, Federal Rules of Civil Procedure, and the record does not indicate that he was so treated. Now, on appeal, rather than vouching for his credibility as she is required to do, appellant attempts to discredit the testimony of her own witness that Clinton stole the car, and shape it into an unwarranted conclusion on the part of the jury that Cherry alone took the car, or assisted Clinton in so doing, thus giving support to her allegation that it was negligence on the part of appellees to hire Cherry without an independent investigation of his past. We think appellant failed to support her contention in this respect.

 We further are of the opinion that appellant failed to offer sufficient evidence to support her claim that appellees were negligent in failing to provide and maintain adequate supervision and control over the cars left in their custody. Her evidence established that the Baker car was stolen by Clinton sometime before 10:00 o'clock p. m., when Cherry and Clinton left the garage together and proceeded to 16th and Eye Streets where the car was parked. The car was seen in the vicinity of the wash-rack at the garage at approximately 8:30 o'clock p. m. The evidence further established that during these hours, up to 10:00 o'clock p. m., there were on duty at the garage the night manager, Smith, a parking attendant, and a cashier, who was stationed in an office at the garage's single exit. Appellant cannot overcome her lack of proof on this allegation by asserting, as she does, that there was no evidence offered to show whether or not the cashier was on duty on the night in question. Obviously, the fact that the Baker car was stolen from the garage alone does not constitute evidence of lack of control or supervision, and appellant has failed in all other respects to show such.

 Thus, it is our view that as a matter of law appellant failed to present evidence of negligence sufficient to make out a case to go to the jury and a directed verdict in appellees' favor was warranted. It was accordingly not error for the court, having submitted the cause to the jury, to set aside the resulting verdict in behalf of appellant and enter judgment for appellees notwithstanding the verdict.

Affirmed.

---

[9] Accordingly, we need not here decide whether the duty, recognized by this court in Medes v. Hornback, 56 App.D.C. 13, 6 F.2d 711, 712, "of one operating a garage in which automobiles are kept in storage for pay to exercise ordinary care by the employment of trustworthy servants" should be extended beyond the bail-or-bailee relationship to the benefit of a third party who is a stranger to the transaction.