**Robert L. DUNN, Executor of the Estate of Ruth E. Hoover, Deceased, Appellant,**

**v.**

**William J. MARSH, Executor of the Estate of Margaret V. Marsh, Deceased, Appellee.**

**No. 21169.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 5, 1967.

Decided Feb. 2, 1968.

Leventhal, Circuit Judge, dissented.

Mr. Francis X. Quinn, Washington, D. C., for appellant.

Mr. Stephen S. Boynton, Washington, D. C., for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellant, defendant in the District Court, is Executor of the Estate of Ruth E. Hoover, who met her death in a vehicular collision to be described. Appellee, who was plaintiff, is Executor of the Estate of Margaret V. Marsh, who met her death in the same collision. She was a passenger in the car driven by Ruth E. Hoover. This car was struck at a street intersection by a Fire Department truck responding to an alarm. The Marsh Executor sued the Hoover Executor alleging the collision was caused by the negligent operation of the car by Ruth E. Hoover, and that the Marsh next of kin sustained pecuniary loss by reason of the wrongful death of Margaret V. Marsh. Appellee obtained a jury verdict for $8,000.00 in damages, with judgment entered accordingly. We reverse for error in the instructions to the jury.

The Hoover car entered the intersection from the north. In doing so it passed no stop sign or signal. The fire truck entered from the west, passing a stop sign. There was evidence, however, that the fire truck was making audible and visual signals. This brought into play Traffic and Motor Vehicle Regulations, Section 50, which provides:

> (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals * * *
>
> 1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

The jury could find that Ruth E. Hoover did not comply with this regulation. Accordingly they could find that she was negligent. The court properly submitted the issue to the jury. Appellant with reasonable basis contends that the over-all manner of the court's submission was to require the jury to find that Ruth E. Hoover was negligent, thus taking the issue away from the jury. We do not pass upon this alleged error, for reversal is required by the error we find in the instructions bearing upon the duty of the driver of the fire truck. Section 6 of the same regulations defines this duty:

> (a) The driver of an authorized emergency vehicle, when responding to an emergency call * * * or when responding to * * * a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein contained.
>
> (b) The driver of an authorized emergency vehicle may:
>
> * * * * * *
>
> 2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation. * * *

As we have said there was a stop sign facing the driver of the fire truck as he approached the intersection. Yet there was evidence he did not slow down. The accident was investigated by an officer of the Accident Investigation Unit of the Metropolitan Police. He testified:

> Q. Did you ask him [the fire truck driver] what his speed was as he approached the scene of the accident? A. Yes, sir.
>
> Q. What was his reply to that? A. 25 to 30.
>
> Q. Did you ask the officer [sic] how fast he was going when the accident took place? A. Yes, sir.
>
> Q. What was his response to that? A. The same speed.

Another witness to the accident testified:

> Q. And as you continued to watch it [the fire truck] what did it do? A. Well, before it got to the corner it broke a little bit.
>
> Q. What do you mean when you say *it broke a little bit?* A. It seems like it tried to stop a bit.
>
> Q. And then what did it do? A. It accelerated.[1]

The speed of the fire truck bears on the issue of compliance by its driver with the regulation. There was no uniformity in the testimony about this. One witness said "it was going pretty fast." Another, "approximately 30 to 35 miles an hour." The investigating officer said the driver told him at the scene of the accident his speed was "25 to 30." The driver testified that when he made the statement he had just gotten off the hospital table and "had told the nurse that I was dizzy and not feeling too good," that he "was a little confused," and that "When I got myself together I told him [the police officer] it was 15 to 20."

The fire truck was the second of two fire apparatus responding to the same alarm. The first had passed the intersection, with siren sounding, before the accident. It was about half a block ahead of the second one, a distance not specified in yards or feet. There is no evidence one way or the other that as the first apparatus approached the intersection the Hoover car failed to comply with Section 50(a) (1), *supra.* It was November, and the windows of the Hoover car were up. Except for the emergency this car had the right of way;[2] and there is no evidence whatever as to its speed. A witness to the accident testified that he heard only one continuous sound, and that he had his windows up.

In this evidentiary situation the jury could find that Ruth E. Hoover heard a continuous siren, did not distinguish between two sirens, saw the first engine pass the intersection, believed the emergency passed with the passing of this apparatus, and proceeded into the intersection at a reasonable speed. The jury could find this conduct to be negligent but were not required to do so. If the jury did find Ruth E. Hoover to be negligent it remained for them to decide whether her negligence was a proximate cause of the collision. If so, appellant was liable. Danzansky v. Zimbolist, 70 App.D.C. 234, 236, 105 F.2d 457, 459. If not, appellee was not entitled to recover. Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626. This brings to the fore the issue of negligence and proximate cause on the part of the driver of the fire truck. The evidence clearly raised a factual issue whether the fire engine entered the stop-sign intersection at 35 miles an hour without slowing down, with the Hoover car already in the intersection, knocking it some 90 feet.[3] Accordingly the jury, if properly instructed, could well have found that the fire truck driver was negligent. As to this, however, the court charged:

> So far as the Fire Department apparatus is concerned, a Fire Department truck when responding to a fire and sounding a siren and blinking its red lights has the right of way over all other vehicles on the roadway. It is not bound by the speed limit * * *

1. The jury could consider this with evidence that the route of the fire truck was somewhat downgrade to a point before the intersection was reached, then leveled off; so that when this witness said "it broke a little bit" or "It seems like it tried to stop a little bit" the jury might have found this referred to a shifting of gears or a releasing of brakes before the truck accelerated into the intersection.

2. We do not outline the evidence as to probable visibility of the drivers with respect to one another, for there was no difference in the view of each which weighed against Ruth E. Hoover on the issue of negligence or proximate cause.

3. There was testimony of skid marks of 8 feet left by the fire truck.

So far, so good. But the judge immediately added:

> and it is not bound to stop or even slow down at stop signs or to have regard for traffic lights. Consequently, it is not negligence on the part of the driver of a Fire Department vehicle under such circumstances to pass stop signs or traffic lights. * * * [4]

Defense objection to this instruction was sound.[5] Those responsible for applicable safety regulations have considered the duties of drivers of fire apparatus to other vehicles and persons using the same streets and have decreed that the driver of such apparatus in responding to fire alarms may "Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation"; and that the provisions of the regulations "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons. * * *"

The question remains whether the error[6] in failing so to instruct was harmless on the theory that in any event the jury was required to find Ruth E. Hoover was also negligent and that her negligence was a proximate cause of the accident. Even though we assume she was negligent we cannot assume further that her negligence necessarily was a proximate cause of the collision. This was to be decided by the jury under proper instructions as to the factors bearing on the negligence of the fire engine driver and the relation of such negligence, if found, to the cause of the accident. As the court instructed:

> The proximate cause of an injury is defined in the law as that cause which in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.

This statement of the law has consistent support in the decisions of our court, which has often held that proximate cause is "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." Howard v. Swagart, 82 U.S.App.D.C. 147, 151, 161 F.2d 651, 655; S. S. Kresge Co. v. Kenney, 66 App.D.C. 274, 86 F.2d 651. And see Boland v. Love, 95 U.S. App.D.C. 337, 344, 222 F.2d 27, 34. And for a clear statement of the correlative necessity of both negligence and proximate cause to establish liability, see Richardson v. Gregory, *supra*. No doubt proximate cause is definable in other terms, depending upon the evidentiary context of the case. See, for example, Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74, 51 A.L.R.2d 624. But the above definition applies to this case on the evidence. Within this definition it

4. The instruction was objected to as follows:

   [Defense Counsel:] I object to your reference to the Fire Department apparatus, that he has the right of way and that he does not have to stop or slow down. * * * I would like to note specifically the regulation requires him to slow down.

5. The error was not cured by the further instruction:

   Naturally, that is not a license to drive carelessly or recklessly. For example, the driver of a Fire Department apparatus does not have a right to run into a parked car. The driver of a Fire Department apparatus must indeed use due care, but due care in the case of the driver of a Fire Department vehicle responding to a fire is entirely different from the due care required of the driver of other vehicles. Due care is measured by the nature of the vehicle and the surrounding circumstances.

6. A further error, not called to the trial court's attention, came in the midst of an instruction in many respects correct: "It is only if the driver of the fire truck was alone negligent and his negligence alone caused the accident that plaintiff would not be entitled to recover damages" against the Executor of Ruth E. Hoover. Even if Ruth E. Hoover and the fire truck driver were both negligent, but the latter's negligence was the sole proximate cause, plaintiff would not be entitled to recover.

was open to the jury to find that the fire truck driver failed to comply with the "slow down" safety regulations, and that this was negligence which in natural and continual sequence caused the injury complained of, the negligence of Ruth E. Hoover, assuming it, not being an efficient intervening cause; in other words, that the negligence of the driver of the fire truck was the sole proximate cause.[7] The instruction respecting the duty of the driver of the fire truck having been withheld, we cannot affirm the judgment placing liability upon negligence of Ruth E. Hoover as a proximate cause of the accident; for properly instructed the jury might validly have found that on all the evidence the driving of the fire apparatus into the intersection at approximately 35 miles an hour without slowing down at the stop sign was negligence which was the proximate cause of the collision to the exclusion of any negligence, if found, on the part of Ruth E. Hoover.[8]

Reversed and remanded.

LEVENTHAL, Circuit Judge (dissenting):

The majority seems troubled that fire engines may be rushing to emergencies without proper regard for the safety of other traffic. With all respect for that concern, the fact is that no one responsible for the conduct of the fire engine is involved in this law suit.

The parties here are the estates of the deceased, passenger v. driver. The jury found the driver negligent, and the majority, not passing on alleged errors of the trial judge with respect to the negligence issue, assumes that Mrs. Hoover did negligently drive into the intersection. The sole question then is whether that negligence—inattentive driving—was *a* proximate cause of the collision that immediately ensued.

We are not concerned here with an atypical situation involving acts of negligence separated by substantial time, or one where the risk created by the actor's conduct is substantially different or less than the harm that occurs as a consequence of some other actor's concurrent or subsequent conduct. This is a routine collision case, and the harm that resulted from Mrs. Hoover's inattentiveness, clearly a but-for cause of the accident, is entirely foreseeable. As concurrent tortfeasors are jointly and severally liable, I think any error in the District Judge's treatment of the issue of proximate cause was harmless.

I think it appropriate also to note that while the statements of the District Judge concerning the duties of emergency vehicles were not beyond reproach they were not, strictly speaking, incorrect. His statement that the fire engine "is not bound to stop or even slow down at stop signs," is not contrary to the regulation, which only requires slowing down "as may be necessary for safe operation." The Judge expressly noted that the fire engine operator has "no license to drive carelessly or recklessly." This was an open intersection, and the record establishes that other traffic pulled to the curb. All drivers have to assume some level of attentiveness on the part of others using the roads. Defense counsel did not point out to the District Judge that he might be misleading the jury. Rather he insisted that the regulation *requires* fire trucks to slow down. That it clearly does not do.

In any event, defendant's objections were not to the trial court's handling of the proximate cause issue. The defense theory of the accident was that Mrs.

7. District of Columbia v. Lapiana, D.C. App., 194 A.2d 303, 304. *Cf.* Bland v. Hershey, 60 App.D.C. 226, 50 F.2d 991.

8. Proximate cause is ordinarily a question for the jury. Kendall v. Gore Properties, Inc., 98 U.S.App.D.C. 378, 386–387, 236 F.2d 673, 681–682; Hanna v. Fletcher, 97 U.S.App.D.C. 310, 314, 231 F.2d 469, 473, 58 A.L.R.2d 847, cert. denied *sub nom.* Gichner Iron Works, Inc. v. Hanna, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501; Farmers Co-op. Elevator Ass'n Non-Stock of Big Springs, Neb. v. Strand, 382 F.2d 224, 228 (8th Cir.); Swearngin v. Sears Roebuck & Co., 376 F.2d 637, 642 (10th Cir.).

Hoover was not negligent because the fire truck was going too fast for her to have time to react. On this theory, pressed hard by defense counsel, it is not decisive whether or not the fire truck was negligent. What controls are the hard facts of time, speed and distance. If a reasonable driver could and would have stopped, the passenger must recover.

I respectfully dissent.