The GEORGE WASHINGTON UNIVERSITY, et al.,
Appellants,

v.

Murray S. WAAS, Appellee.

No. 92–CV–985.

District of Columbia Court of Appeals.

Argued June 6, 1994.

Decided Sept. 19, 1994.

Alfred F. Belcuore, with whom Joseph Montedonico and Denise Adams Hill, Washington, DC, were on the brief, for appellants.

Lawrence S. Lapidus, Washington, DC, with whom Anthony G. Newman, Rockville, MD and Ronald A. Karp, Washington, DC, were on the brief, for appellee.

Before WAGNER,* Chief Judge, and FERREN ** and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This is an appeal from a judgment of $650,000 for medical malpractice against appellants George Washington University ("GWU") and two doctors in that university's hospital.[1] The verdict was based upon the negligent failure of the defendants to diagnose appellee Murray Waas's colon cancer during a period of treatment from October 1984 to March 1985. The diagnosis of colon cancer was eventually made by a doctor in another hospital in January 1987.

At trial, considerable disputed evidence was introduced about Mr. Waas's failure to faithfully follow the instructions of his doctors (including both appellants and other doctors who treated him) and otherwise cooperate in medical treatment, both prior and subsequent to the cancer diagnosis. On appeal, GWU contends that (1) the trial court erred in giving a jury instruction that Mr. Waas's post-diagnosis non-cooperation was not evidence of contributory negligence; and (2) the trial court abused its discretion in refusing to give GWU's requested instruction that a patient has a duty to cooperate with his or her physician. Finding no reversible error, we affirm.

---

* *Judge* WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

** *Judge* FERREN was *Acting Chief Judge* of this court at the time of argument. His status resumed as *Associate Judge* on June 14, 1994.

1. For convenience, we shall refer to the university and the two individual appellant doctors collectively as simply GWU.

2. The instruction on contributory negligence in its entirety is set forth in Part II of this opinion.

3. GWU, in addition, argues that in any event, the post-diagnosis conduct should have been considered by the jury as mitigating Mr. Waas's damages. However, Mr. Waas points out that the duty to mitigate is akin to the doctrine of avoidable consequences, an affirmative defense which may be waived if not pled pursuant to Super.Ct.Civ.R. 8(c) or not litigated in the trial court. *See Robinson v. Carney,* 632 A.2d 106, 108 n. 4 (D.C.1993); *Edward M. Crough, Inc. v. Department of Gen. Serv. of the District of Columbia,* 572 A.2d 457, 466 (D.C.1990). "[C]ontributory negligence is negligence of the plaintiff be-

## I.

Although GWU's major focus of Mr. Waas's non-cooperation with his doctors was on conduct preceding the eventual discovery of the cancer, evidence of Mr. Waas's conduct following the diagnosis was also admitted into evidence over Mr. Waas's objection. However during the discussion of jury instructions, the trial court, over GWU's objection, subsequently instructed the jury that "any behavior on Mr. Waas'[s] part after the diagnosis of cancer in January 1987 is not evidence of contributory negligence which contributed to his result."[2]

■ GWU argues that the trial court erred in giving this instruction, claiming Mr. Waas's post-diagnosis non-cooperation was direct evidence of contributory negligence which could act as a complete bar to his recovery.[3] GWU principally relies on *Chudson v. Ratra,* 76 Md.App. 753, 548 A.2d 172 (1988), *cert. denied,* 314 Md. 628, 552 A.2d 894 (1989), and *Grippe v. Momtazee,* 705 S.W.2d 551 (Mo.Ct.App.1986), for the proposition that a patient's conduct occurring after a doctor's alleged negligence can properly form the basis of a finding of contributory negligence where the patient's own negligence directly contributed to the injury. GWU argues that Mr. Waas's principal inju-

fore any damage, or any invasion of his rights, has occurred, which bars all recovery. The rule of avoidable consequences comes into play after a legal wrong has occurred, but while some damages may still be averted, and bars recovery only for such damages." *Robinson,* 632 A.2d at 108 n. 4 (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 65, at 458 (5th ed. 1984)). In any event, we are unable to discern any argument on this theory at trial or any request by GWU for an instruction on mitigation relating to the post-diagnosis conduct or that GWU otherwise made the point in the discussion with the trial court about jury instructions. The argument now comes too late. *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967).

GWU also contends that the post-diagnosis conduct could be used to impeach Mr. Waas's credibility as to his testimony relating to the alleged pre-diagnosis non-cooperation. Nothing in the instruction prevented its use in that regard, and indeed GWU appears to have used it for this very purpose. The instruction given by the trial court limited the jury's use of post-diagnosis conduct solely for purposes of a contributory negligence finding and nothing else.

ry is "the anxiety arising from his appreciation that, because of a delay in diagnosis, his chance of surviving without reoccurrence [of cancer] is less than what it would have otherwise been" and that any "negligence of Mr. Waas in taking steps reasonably to avoid that anxiety directly contributes to that injury."

■ Generally "the plaintiff is barred from recovery if his [or her] negligence was a substantial factor in causing his [or her] injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in 'some degree' to his [or her] injury." *Sinai v. Polinger Co.*, 498 A.2d 520, 528 (D.C.1985).[4] "Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." Standardized Civil Jury Instructions for the District of Columbia No. 5–11 (1981). *See Dunn v. Marsh,* 129 U.S.App.D.C. 245, 248, 393 F.2d 354, 357 (1968).

In dealing with medical malpractice situations where the plaintiff's alleged contributory negligence occurred subsequent to the defendant's alleged negligence, the majority of courts appear to have taken the view, at least on the specific facts presented, that to totally bar recovery, the contributory negligence of the plaintiff must be contemporaneous with the negligence of the doctor; therefore, a patient's non-cooperation with the doctor's instructions after the doctor's alleged negligent act will only reduce or mitigate the patient's damages to the extent that the patient's negligence increased the extent of the injury. *See Chudson,* 548 A.2d at 181–82 and cases cited therein. *Accord, Blair v. Eblen,* 461 S.W.2d 370, 372 (Ky.1970) (plaintiff's failure to exercise injured hand as instructed); *Leadingham v. Hillman,* 224 Ky. 177, 5 S.W.2d 1044, 1045–046 (1928) (plaintiff's failure to go to hospital to get arm rebroken and reset as instructed by defendant); *Flynn v. Stearns,* 52 N.J.Super. 115, 145 A.2d 33, 38 (App.Div.1958) (plaintiff's failure to continue exercises of elbow as instructed); *Jenkins v. Charleston General Hospital & Training School,* 90 W.Va. 230, 110 S.E. 560, 563–66 (1922) (plaintiff's failure

to return to hospital as instructed); *Williams v. Wurdemann,* 71 Wash. 390, 128 P. 639, 640 (1912) (plaintiff's failure to return to doctors for treatment "when he discovered that he was not getting along as well as he should"). "This view seems to regard the patient's subsequent negligence as simply exacerbating the damage flowing from the doctor's negligence rather then contributing to the injury caused by that negligence." *Chudson,* 548 A.2d at 181.

However, other courts have rejected any strict simultaneity rule and held that a plaintiff's subsequent negligence may form the basis of a finding of contributory negligence which would bar plaintiff's recovery without requiring that the plaintiff's contributory negligence be concurrent with the defendant's alleged negligence. The leading case is *Chudson,* 548 A.2d at 182. In *Chudson,* the Court of Special Appeals of Maryland specifically acknowledged the foregoing line of cases which require that plaintiff's negligence be concurrent with that of the defendant's, and observed:

> In some contexts, this may be an entirely correct approach, even where contributory negligence is generally held to be a bar to any recovery. Where the injury flowing from the primary negligence is essentially complete prior, and thus without regard, to any negligence on the part of the patient, and the patient's failure to seek further advice or treatment simply enhances the injury, the distinction drawn by those cases may be appropriate. Where liability for negligence or malpractice has been incurred by a physician, subsequent negligence of the patient, *which aggravates the injury primarily sustained at the hands of the physician,* does not discharge the latter from liability, but only goes in mitigation of damages.

548 A.2d at 182 (citations omitted) (emphasis in original). In *Chudson,* the alleged negligent diagnosis occurred in January 1984, and the actual diagnosis of breast cancer in August 1984. *Id.* at 174–75. The key issue was whether the patient's failure to seek medical assistance during the critical period (from

---

4. The "in some degree" language refers to some degree of contribution to the injury rather than to some degree of negligence. *Sinai,* 498 A.2d at 528.

the date of defendant's alleged negligence to the date of diagnosis) was contributory negligence. *Id.* at 176. The plaintiff felt some changes in the lump in her breast in April 1984 but did not contact her physician until August 1984. *Id.* at 174–75. The court in *Chudson* went on to hold that:

> The injury sued upon here was the spread of the cancer to the point of incurability and lethality, and ... the evidence allowed a finding that [the plaintiff's] failure to seek medical assistance after January 1984, did more than simply exacerbate her injury. It directly contributed to it by precluding diagnosis and treatment at a time when the cancer was still probably curable.

*Id.* at 182. The court stated that this view is consistent with the general view of contributory negligence in Maryland. *Id.* Because contributory negligence is viewed as an aspect of the plaintiff's response to a known danger from which injury might reasonably be anticipated, the plaintiff's contributory negligence need not be congruent in time with the defendant's negligence. *Id.* Thus, the court stated that, particularly in cases where the injury does not manifest itself immediately, as in cancer cases, the "test is not simultaneity but whether the plaintiff's dereliction has significantly contributed to the injury for which he or she sues."[5] *Id.* at 182–83; *see generally Roers v. Engebretson,* 479 N.W.2d 422, 424 (Minn.Ct.App.1992) ("The jury heard competent expert testimony from which it could conclude that Mrs. Roers' nine-month delay in returning to Dr. Engebretson allowed the tumor to more than double in size and decreased her changes of survival by 75%").

■ We need not here choose between these somewhat conflicting analyses because under either approach, GWU's argument fails. Obviously, under the simultaneity approach, Mr. Waas's post-diagnosis conduct was not contemporaneous with the doctors' negligence, and thus this conduct could not

---

5. In *Grippe,* 705 S.W.2d at 553, the plaintiff was a patient of Dr. Utto from 1969 to the doctor's death in 1978. *Id.* During that time, she had a cyst in her left breast aspirated. On January 11, 1979, plaintiff was examined by the defendant for the first time complaining of pain in the area of the lump. *Id.* The defendant instructed her to return in six months. *Id.* Nineteen months later on August 21, 1980, plaintiff returned to the defendant who discovered lumps in both breasts and recommended that she see two surgeons. *Id.* Plaintiff returned to see the defendant on March 19, 1981, without having consulted the surgeons. *Id.* The lump in the right breast had grown, and she was immediately referred to a surgeon previously recommended. *Id.* A biopsy revealed a malignancy. *Id.*

At trial, plaintiff's experts criticized the defendant for failing to make a referral to a surgeon on January 11, 1979. *Id.* A contributory negligence instruction was given, and on appeal, plaintiff challenged the appropriateness of this instruction. *Id.* at 554. Plaintiff claimed that contributory negligence was not applicable because if the defendant was negligent on January 11, 1979 her failure to return merely aggravated her damages or if the defendant was negligent on August 21, 1980, her conduct after that date was immaterial. *Id.* at 555.

The Missouri Court of Appeals concluded that:
> Assuming arguendo, that there was evidence of negligence on the part of the doctor on the first visit [January 11, 1979] in failing to discover and diagnose the carcinoma, [plaintiff's] failure to return as instructed, rather than ag-

gravating her damages, contributed to the very gist of plaintiff's cause of action: the failure to diagnose the cancer prior to metastasis.

*Id.*

Plaintiff's second hypothesis was rejected because plaintiff's own expert testified that the defendant was not negligent on August 21, 1980 because he did refer her to a surgeon. *Id.* at 556.

In *McGill v. French,* 333 N.C. 209, 424 S.E.2d 108, 109 (1993), the issue before the North Carolina Supreme Court was whether the trial court erred in submitting the issue of contributory negligence to the jury. The plaintiff in this case failed to attend a follow-up appointment with the doctor after the diagnosis of prostate cancer. *Id.* 424 S.E.2d at 110. The Supreme Court concluded that:
> [I]t is more logical to focus on the *spread* or *rate of spread* of the previously diagnosed cancer as the "illness" or resulting injury, which is, from the actionable negligence standpoint in this case, what really debilitated plaintiff and shortened his life expectancy.

*Id.* at 113 (emphasis in original). Interestingly, to support their holding the Supreme Court stated that given the general standard of reasonable care on the plaintiff, "we are even more convinced that the jury, based on its own knowledge and experience, i.e., common sense, could understand and determine that had plaintiff followed the advice of defendant and either returned for follow-up care or called, his treatment could have begun earlier and thus the rate of spread of his disease might have lessened." *Id.* at 114.

serve as a complete bar to recovery. It could only act to mitigate the damages.

██ Under the *Chudson* approach, we think that Mr. Waas's claimed injury lies in the spread of colon cancer to a more advanced stage because of the delay in diagnosis, and the damages flowed from that injury. In his complaint Mr. Waas alleged:

> [T]he male plaintiff suffered spread of his [cancer] beyond the wall of the colon making it incurable. He has suffered and will in the future suffer extensive surgery, the loss of large portions of his bowel, radiation therapy, additional hospitalizations and permanent re-evaluations of his cancer; resulting in great pain, suffering, mental distress, embarrassment, scarring, disability, as well as medical and hospital related expenses, both past and future; necessitating alterations in all aspects of his life. He has sustained and will in the future sustain loss of earnings and earning capacity and impairment of his ability to enjoy life, all of which is permanent.

The trial proceeded on this general theory. Experts testified that had the cancer been detected earlier, it would have been excised before progressing to a more serious stage, and thus Mr. Waas would not have needed to undergo radiation therapy and/or chemotherapy and that the chances of recurrence would

have been lessened. Extensive testimony was taken as to the likelihood of recurrence and the loss of future earnings.[6] Mr. Waas's economist testified at trial that the loss of future earnings at present value if Mr. Waas died five years after trial was between $646,639 and $920,169; if Mr. Waas died ten years after trial, the loss would be between $555,624 and $821,624; and if Mr. Waas died twenty years after trial, the loss would be between $333,165 and $581,811.[7] With respect to recurrence, GWU's expert testified that the prospect of recurrence after Mr. Waas survived five years, as he had at the time of trial, was between 8% and 15%. We simply cannot agree with GWU's characterization of Mr. Waas's anxiety as the "principal injury" for which he seeks recovery, but rather view it as simply one of the several elements of damage that he asserts flowed from the cancer's growth. *See McGill,* 424 S.E.2d at 113 (in failure to diagnose case, spread of cancer is the operative "injury"). A single injury cannot be divided into several damage components, so that a plaintiff's subsequent conduct which is relevant to only one such component can defeat the entirety of the claim under the doctrine of contributory negligence. *Cf. Colbert,* 641 A.2d at 474–75 (where patient has already suffered substantial injury by reason of improper treatment of cancer, actual metastasis is not a separate

---

**6.** GWU argues for the first time at oral argument that the trial court erred in permitting the jury to hear and to base its verdict upon the likelihood of recurrence of the cancer, which was 15% or less, and upon the economic consequence that would flow therefrom. GWU relies on *Colbert v. Georgetown Univ. Hosp.,* 641 A.2d 469, 475 n. 11 (D.C.1994) (en banc), for the proposition that "the probability of such a development [the recurrence of cancer] was far less than 50%, and was therefore too speculative, conjectural, [and] uncertain to support a damage award." *Id.* (quoting *Wilson v. Johns–Manville Sales Corp.,* 221 U.S.App.D.C. 337, 346, 684 F.2d 111, 120 (1982)). While *Colbert* was decided after the trial and briefing on appeal, as indicated above it directly quoted a 1982 decision of our federal appellate court applying that court's view of local law and following what it termed "the traditional rule." *Id.* at 345 n. 44, 684 F.2d at 119 n. 44.

GWU did not argue this issue to the trial court nor did it raise it in its brief to this court. Under long-established precedent, failure to raise an issue at trial normally precludes its consideration on appeal. *Miller v. Avirom,* 127 U.S.App.D.C. at

369–70, 384 F.2d at 321–22. Moreover, the failure to raise an issue in one's brief prevents the opposing party from briefing the issue, and it prevents both this court and opposing counsel from preparing for its consideration at oral argument, contradicting the very purpose of that stage of the appellate process. We therefore do not address the issue on this appeal. *See Berg v. United States,* 631 A.2d 394, 396 n. 8 (D.C.1993); *Rose Lees Hardy Home and School Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 343 A.2d 564, 567 (D.C.1975); *Watwood v. Credit Bureau, Inc.,* 97 A.2d 460, 462 (D.C.1953); *Democratic Cent. Comm. of the District of Columbia v. Washington Metropolitan Area Transit Com'n,* 158 U.S.App.D.C. 7, 11 n. 16, 485 F.2d 786, 790 n. 16 (1973), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 199 (1989); *Wardman–Justice Motors, Inc. v. Petrie,* 59 U.S.App.D.C. 262, 267, 39 F.2d 512, 517 (1930).

**7.** This calculation was based on an annual salary of either $55,000 or $75,000; an increase of 7% annually to account for inflation, promotions and productive growth, and a reduction for state and federal taxes and personal maintenance.

injury for purposes of statute of limitations; single cause of action may not be so split into separate parts).

So viewed, this case is entirely harmonious with *Chudson.* That case held that plaintiff's conduct during the period between the doctor's negligence and the eventual discovery of the cancer could be viewed as contributory negligence. 548 A.2d at 182. So too, in the case before us, Mr. Waas's conduct during that same period could, under the trial court's instruction, be taken into account by the jury in assessing whether he had been contributorily negligent in contributing to the delayed diagnosis. Nothing subsequent to that diagnosis itself could have contributed to that delay. On this record, Mr. Waas's post-diagnosis non-cooperation could only have aggravated or exacerbated certain elements of his damages, not eliminated any recovery whatever. We find no error in the trial court's instruction with respect to the scope of contributory negligence analysis.

## II.

GWU also asserts that the trial court abused its discretion in refusing to include in the contributory negligence instruction its requested statement that: "Specifically, a patient is contributorily negligent if the patient fails in his duty to cooperate with his doctor in proper diagnosis and treatment and proximately causes the injury that he is complaining about in the lawsuit." [8] The proposed instruction was based on language in *Stager v. Schneider,* 494 A.2d 1307, 1312 (D.C.1985): "We agree with the trial judge (and those appellate courts which he cites) that a patient has a duty to cooperate with her doctor in proper diagnosis and treatment." GWU contends that this specific instruction was necessary to explain and to define the duty of reasonable care imposed on Mr. Waas by the more general contributory negligence instruction.

Generally a party is entitled to a jury instruction upon the theory of the case if there is sufficient evidence to support it. *Wingfield v. Peoples Drug Store, Inc.,* 379 A.2d 685, 688 (D.C.1978); *Weil v. Seltzer,* 277 U.S.App.D.C. 196, 200, 873 F.2d 1453, 1457 (1989); *Montgomery v. Virginia Stage Lines, Inc.,* 89 U.S.App.D.C. 213, 215, 191 F.2d 770, 772 (1951). However, a "trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." *Psychiatric Institute of Washington v. Allen,* 509 A.2d 619, 625 (D.C.1986); *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834, 841 (D.C.1980) ("the refusal to grant [an instruction] is not grounds for reversal when the charge as given, although in a more general form, fully informs the jury as to the law"); *Wingfield,* 379 A.2d at 688–689 (the substance of appellant's damage claim was presented by the charge to the jury, and thus no reversal error); *Montgomery,* 89 U.S.App.D.C. at 215, 191 F.2d at 772 (when "the meaning of a request [for an instruction] is reasonably apparent, and its subject-matter is important and not sufficiently covered by the general charge, a court would not be justified in ignoring the request"); *Evans v. Capital Transit Co.,* 39 A.2d 869, 871 (D.C. 1944) ("refusal to grant an instruction is not ground for reversal where the charge given, although in a more general form, fully informs the jury as to the law").

The trial court instructed the jury as follows with respect to Mr. Waas's duty of care:

> As you have heard from counsel, we also have the principle of [ ] contributory negligence for you to consider in this case. Contributory negligence is negligence on the part of the person injured which combined in some degree with the negligence

---

8. The court refused the instruction when Mr. Waas objected to its use:

> THE COURT: As to that one sentence, counsel for the plaintiff have any—
> [COUNSEL FOR MR. WAAS]: I object. I object. It is redundant and it is unduly stressing something that would lead the jury to be-

lieve the court favors the defense on the issue of contributory negligence.

> THE COURT: Okay. Declined over objection. Counsel can argue the issue. I think the instruction the court will give is sufficient for counsel to argue that point.

of another proximately causes the injury of which the injured party complains. A person is contributorily negligent if he fails to act with the reasonable prudence which would [be] exercised by an ordinary, reasonable person under the circumstances. Any degree of contributory negligence bars a plaintiff's recovery.

A plaintiff cannot recover if his negligence is a proximate cause of his injury. The defendant or the defendants have the burden of proving that the plaintiff's negligence was a cause of the plaintiff's injuries.

In this case you are instructed that in order for Mr. [Waas] to be contributorily negligent in this case the defendants have the burden of proving two things: that Mr. Waas did not act as a reasonable prudent person would have under the same or similar circumstances; and two, that his negligence was a proximate cause of the delay in his diagnosis. You are instructed that any behavior on Mr. Waas' part after the diagnosis of cancer in January 1987 is not evidence of contributory negligence which contributed to his result. The defendants have the burden of proving both of these elements in order to prove contributory negligence.

Considering the instructions as a whole, as we must, in the context of this litigation, we conclude that the trial court did not commit reversible error in refusing to give the more specific instruction.

GWU relies on *Sandoe v. Lefta Assocs.,* 559 A.2d 732, 738–745 (D.C.1989); *Montgomery,* 89 U.S.App.D.C. at 215, 191 F.2d at 772; *Reese v. Wells,* 73 A.2d 899, 902–903 (D.C. 1950), for the proposition that a specific instruction must be given when there is evidence to support it. This reliance is misplaced. In all three cases, the specific instruction was necessary to explain to the jury specialized legal doctrine that was not adequately described in the general instruction nor readily apparent to the jury.

*Sandoe* is particularly illustrative of the principle. Prior case law had abolished the detailed common law categories of landowner liability, and the corresponding duties of due care, and substituted a generalized duty of reasonable care under all the circumstances. *Sandoe,* 559 A.2d at 738. The trial court consequently gave only a general instruction which omitted any reference to a duty to inspect, a component of the prior common-law duty. *Id.* at 741 n. 10. This court concluded that this component continued to have importance as an aspect of the duty of reasonable care. *Id.* at 742. Accordingly, this court ruled that "[w]hether an inspection is required in a particular case, and if so, the nature of the inspection are questions of fact," and "[t]he instructions, therefore, must alert the jury to the relevancy of these factual determinations." *Id.* at 743. The general instruction failed to provide the jury with sufficient guidance in its determination of what landowner behavior constituted reasonable care under the circumstances of the case. *Id.* at 745.

Here, in contrast, the jury instruction did not exclude major legal principles that the jury needed to render a verdict. There is nothing arcane or specialized about the concept of cooperation with one's treating doctors, a matter fully within the everyday experience of jurors. The jury was competent to weigh, in considering the question of Mr. Waas's reasonable prudence, the considerations implicit in GWU's requested instruction. The concept of the general need to cooperate in medical matters was not challenged at trial by Mr. Waas; to the contrary, his testimony and argument was aimed at explaining the reasons for his conduct. The additional instruction proposed by GWU was not mandatory in the circumstances here.

It would, however, not have been amiss to have given an instruction somewhat along the lines requested by GWU.[9] GWU argues, with some force, that the instructions as given exhibited a certain imbalance; there were a number of specific instructions relating to the standard of care of the defendant doctors, *see* Standardized Civil Jury Instructions

9. GWU presented to the trial court an extensive proposed contributory negligence instruction which contained numerous detailed references to the specific facts of this case. Most of the discussion related to the trial court's disinclination to give such an instruction so fact-specific, which it preferred to leave to the parties to argue. The instruction, on which GWU would have us reverse the judgment, was a single sentence in that lengthy instruction.

Nos. 9–1 to 9–5 (1985 Supp.), but there was no comparable specific instruction relating to the plaintiff's duty of reasonable care in the medical context. Case law in other jurisdictions has approved the giving of such an instruction. *See, e.g., Fall v. White,* 449 N.E.2d 628, 632 (Ind.Ct.App.1983) ("patient has a duty to exercise reasonable care in providing the physician with accurate and complete information and following his instructions for further care or further diagnostic tests"); *Valencia v. Beaman,* 85 N.M. 82, 509 P.2d 274, 275 (Ct.App.1973) ("a patient is required to follow all reasonable and proper advice and instructions given him by his doctor regarding the patient's care, activities and treatment"). Moreover, such an instruction is part of the standard civil jury instructions in several states.[10] Several federal and state model jury instructions incorporate such a concept into the instruction on mitigation of damages.[11]

As *Stager* notes, the general principle of a patient's duty to cooperate in medical treatment is widely recognized. "The creation of the relation of physician and patient gives rise to reciprocal duties to exercise due care: that of the physician to his patient, and that of the patient to his physician and himself in relation to the physician's treatment in endeavoring to effect a cure." 61 AM.JUR.2D, *Physicians, Surgeons and Other Healers* § 302 (1981) (footnote omitted); *see* L.S. Tellier, Annotation, *Contributory Negligence or assumption of risk as defense in action against physician or surgeon for malpractice,* 50 A.L.R.2d 1043 (1956). We see no reason why trial courts should be reluctant in instructing a jury to incorporate this principle in appropriate cases.[12]

*Affirmed.*

---

by following the expert recommendations of his physicians. In other words, a person who has suffered injury by reason of a Defendant's negligence is bound to use reasonable and proper effort to make the damages as small as practical, and to act in good faith to adopt reasonable methods and follow reasonable programs of medical care or treatment"); LEONARD B. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS § 77.01, Instruction 77–7 (1993) (Fifth circuit uses same standard instruction as Eleventh circuit); VIRGINIA MODEL JURY INSTRUCTIONS No. 35–110 (1993) ("A patient who is injured as a result of a physician's negligence has the duty to use ordinary care to avoid loss or minimize or lessen the resulting damage [to follow the advice of his doctor]").

---

**10.** NEBRASKA SUPREME COURT COMMITTEE ON PATTERN JURY INSTRUCTIONS, Nebraska Jury Instructions No. 12.02 (1975) ("A patient is required to follow reasonable advice and to submit to a reasonable treatment prescribed by the doctor"); JAMES L. HETLAND JR. ET AL., MINNESOTA DISTRICT JUDGES COMMITTEE ON STANDARD JURY INSTRUCTIONS GUIDE, Minnesota Practice Jury Instructions No. 428 (2d ed. 1974) (same); JURY INSTRUCTION COMMITTEE OF THE OHIO JUDICIAL CONFERENCE, 3 Ohio Jury Instructions, Civil Issues, Special Topics, No. 331.08 (1984) ("A patient is required to exercise ordinary care for his own safety and should accept and obey all reasonable (advice) (cautions) (instructions) (treatment) given· to him after he has left the (hospital) (doctor's office)"); COMMITTEE ON STANDARD JURY INSTRUCTIONS CIVIL, California Civil Jury Instructions No. 6.28 (1992 Supp.) ("A patient has a duty to follow all reasonable and proper advice and instructions regarding care, activities and treatment given by such patient's doctor"); KANSAS DISTRICT JUDGES' ASSOCIATION COMMITTEE ON PATTERN JURY INSTRUCTIONS, Kansas Pattern Instructions 2d. No. 15.20 (1977) ("A physician has the right to expect a patient to follow reasonable advice").

**11.** COMMITTEE ON PATTERN JURY INSTRUCTIONS DISTRICT JUDGES ASSOCIATION, ELEVENTH CIRCUIT, Pattern Jury Instructions Civil Cases No. 7.2 (1990) ("The Plaintiff also has a duty to minimize his damages

**12.** The instruction proposed by GWU, however, is too absolutist in its wording. It fails to incorporate the concept of reasonableness in conduct which underlies negligence determinations. "It is better to reserve [the word] 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet that obligation." W. PAGE KEETON, *supra* note 3, § 53 at 356.